NATHANIEL F. WALKER, plaintiff in error, vs. JAMES S. WALKER, adm'r, &c., defendant in error.

[1.] Where there is a conflict of testimony and a portion being disregarded, for want of credibility in the witness, it being apparent that they were incapable from nonage to understand the facts about which they testify, and the balance preponderates in favor of the verdict, it is not error in the Court to refuse to grant a new trial, on the ground that the verdict was contrary to the evidence.

[2.] The failure of the representatives of an estate to inventory and sell a portion of the property found in possession of their intestate, at his death, but claimed by a third person, ought not to prejudice the title of the estate; provided the circumstances were such as satisfactorily to account for the omission.

[3.] If one, by his will, undertakes to dispose of property claimed by another, and in his possession, the will is no evidence of claim until its publication; no knowledge of its contents being brought home to the opposite party. Neither can the inventory and appraisement of such property, by the executor, be given in evidence in support of his testator's title; suit having been brought within five years from the death of the testator.

[4.] If a trustee collude with a third person, to defraud his *cestui que trust*, the statute of limitations does not begin to run until after the fraud is discovered.

Trover and new trial, from Upson Superior Court. Decided by Judge CABINESS, November Term, 1857.

An action of trover was brought by James S. Walker, as administrator *de bonis non*, of the estate of William W. Walker, deceased, against Nathaniel F. Walker, to recover certain negroes.

Upon the trial the following evidence was introduced by the plaintiff:

*John Harrison* testified that in 1828 he lived with William W. Walker, deceased, working on his plantation ; knew the negro Hannah referred to in the cause. Samuel Harrison was brother to witness, and Nancy McDaniel his sister. In 1828 the former 3, and the latter 10 years of age.

*Davis Dawson,* heard a demand made by the plaintiff of the defendant in the year 1851, for the negroes Hannah and others. Defendant refused to give up the negroes. Plaintiff gave witness a list of the names of the negroes demanded in order to enable him to recollect them, and plaintiff told him he would be called as witness of the demand.

*Jesse Arrington* testified that he lived as overseer to William W. Walker, in 1830, and lived half a mile from him at the time of his death. The negro Hannah was in possession of Walker at the time of his death. She had 6 children. Wm. Walker exercised acts of control over them.

*Silvanus Gibson,* knew Hannah and children. She had been in the possession of defendant since 1830.

*Benjamin Walker,* knew Hannah in the possession of Wm. W. Walker; first went into his possession in 1823 or 1824 ; he brought her from Putnam county, and she remained with him till his death.

The defendant introduced the following evidence.

*Mary Owen* testified that she knew Hannah to be in James Walker's possession from 1834 or 1835 ; thought Hannah was in possession of Wm. W. Walker till the time of his death. Did not know how Nathaniel Walker got possession of them except it was by the death of his mother.

*Nancy McDaniel* testified she knew the negro Hannah;

she belonged to James Walker. She heard Wm. W. Walker say that Hannah belonged to his father, James Walker; that Rebecca, belonging to Wm. W. Walker, was taken ill in the arms, and James Walker sent Hannah to Wm. W. Walker to cook for him until Rebecca got well; that during the stay of the said Hannah at Wm. W. Walker's the father of witness was going to whip her, and Wm. W. Walker told him not to do so, as if he did his father would send for her and take her back home.

*Answers of Samuel Harrison* to the same effect as the testimony of the last witness.

The defendant then introduced the order of the Court of Ordinary for Upson county, granting letters of administration to Mary C. Walker and Allen M. Walker, on the estate of the said Wm. W. Walker.

*Henry Butt* testified that when he first knew Hannah she was in the possession of James Walker. James Walker's business was managed by Nathaniel and Allen Walker; never saw Hannah any where but at James Walker's.

*E. Atwater*, knew Hannah from the death of Wm. Walker; knew Hannah at the place of James Walker; she was used as his property.

*James Howell* knew Hannah and her children; they were kept on his place and made a crop. James Walker took possession of Hannah and her children after the death of Wm. W. Walker, in the presence of Nat. and Allen Walker, as his own property, and without opposition from them.

*Dempsey Jordan* testified to the same effect; as also did *Peter P. Butt.*

The will of James Walker was offered in evidence by the defendants; and also the records from the Court of Ordinary of Upson county.

The plaintiff objected to the admission of these in evidence, and the Court rejected them.

The Court charged the jury that, " If Wm. W. Walker died in possession of the negroes in dispute, and had possession of them for many years before his death, that was *prima facie* evidence of title, and conclusive until a better title was shown."

" If James Walker took possession of the negroes after the death of Wm. W. Walker, it is incumbent on the defendant who claims under him, to show his right to take them, and you must look to the evidence to satisfy yourselves whether he had such right."

"If the negroes were loaned to Wm. W. Walker, by James Walker, James Walker did not part with the title to them, or dominion over them, but had the right to resume possession of them when the loan was at an end. If you believe from the testimony, that Wm. W. Walker held the negroes under James Walker, as a loan, James Walker had the right to take them into his possession upon Wm. Walker's death; and you will find for the defendant; but if you are not satisfied by the evidence that Wm. Walker held the negroes as a loan from Jas. Walker, then you will find for the plaintiff, unless the defendant has succeeded in showing a title under the statute of limitations. To constitute title under the statute of limitations the possession must be adverse, and must have continued four years preceding the commencement of the suit."

" If when James Walker took possession of the negroes, he and Allen and Nat. Walker held them jointly, and worked them on a farm held by them jointly, and if the negroes were still under the control and dominion of Allen M. Walker, though that control was exercised jointly with James and Nat. F. Walker, while such joint possession was held by James, Allen and Nat. Walker, the statute of limitations did not run against Allen M. Walker as the administrator of the estate of Wm. W. Walker; his possession enured to the benefit of the estate so far as to protect it against the statute of limitations, so long as such possession continued. But if James Walker took possession of the negroes in his own right

and in the presence of the administrators, or either of them, and claimed and held them as his own property, that constituted adverse possession, and the statute of limitations commenced running from the time the negroes were so taken and claimed, and the right of action accrued to the administrators of Wm. W. Walker, and if suit was not commenced within four years from the time such right of action accrued, the plaintiff is barred by the statute, and you should find for the defendant."

The Court then, at the request of defendant's counsel, charged the jury that, "Upon the death of Wm. W. Walker, the title to his negroes vested in Allen M. Walker and Mary C. Walker, his administrators, and they were bound to protect that title, and if James Walker asserted title to said negroes and acquired possession of the same as his own, and used them for four years, it constitutes statutory title by which the administrator *de bonis non* is bound. If James Walker held the negroes as the property of Wm. W. Walker, by the consent of Allen M. Walker, that is not adverse possession; nor would it be adverse possession if James Walker held possession under the control and direction of Allen M. Walker, for that would be holding for Allen M. Walker. But the jury must be satisfied by the evidence that James Walker so held them in order to relieve him from the statutory title."

" And while it is true that a fraudulent possession of said negroes by James Walker, in collusion with Allen M. Walker, would not be good against the rightful administrator of Wm. W. Walker, yet the jury must be satisfied by the evidence in the case of such collusion and fraud, for the law never presumes fraud ; it must be proved by positive or circumstantial evidence."

" If Allen M. Walker or Mary C. Walker, or either of them, by negligence, suffered the title to these negroes to be divested out of them, and to be acquired by James Walker without asserting the right of the estate of the said Wm. W. Walker the administrator *de bonis non* has no right to recover the

negroes; and if James Walker acquired a good statutory ti-
tle by 4 years adverse possession of said negroes against Al-
len M. and Mary C. Walker, then it is good against the plain-
tiff; and if there were negligence by the first administrators
they are answerable to the heirs at law of Wm. W. Walker
for their default."

"Where a party sets up fraud to protect him from the effect
of a statutory title, the statute begins to run in favor of the
defendant as soon as the plaintiff discovers the fraud." (The
Court added here, at the request of the plaintiff, "if there
was fraud and collusion between James and Allen M. Wal-
ker in taking possession of and holding the negroes after the
death of Wm. W. Walker, the statute of limitations did not
run in their favor until the discovery of the fraud, and if
James S. Walker, the administrator *de bonis non*, com-
menced his action within four years after the discovery of
the fraud, he is not barred by the statute.") "And if James
Walker acquired a good statutory title against Allen M. Wal-
ker, as the administrator of Wm. W. Walker, then the admin-
istrator *de bonis non* is not entitled to recover."

At the request of plaintiff's counsel, the Court charged the
jury, "that when property is in the joint occupancy of two
or more persons, and one of them has the title, the possession
is in the one who holds the title. If the negroes in this case
were held jointly after the death of Wm. W. Walker by Al-
len, James and Nat. F. Walker, and if the title was in Allen M.
Walker, the possession of the negroes was in him ; if the title
was in James Walker, the possession was in him."

The jury returned a verdict for the plaintiff, and the de-
fendant moved for a new trial upon the following grounds:

1st. Because the verdict is against the law and evidence in
the case, and against the charge of the Court.

2d. Because the verdict is against the weight of the evi-
dence.

3d, 4th, 5th and 6th. Because the Court erred in refusing

to allow the defendant to read in evidence the appraisement of the said Allen M. Walker and Mary C., administrators of William W. Walker, deceased, and their returns of sales of his property, and the appraisement of Nathaniel F. Walker, executor, and the will of James Walker, deceased.

7th. Because the Court erred in charging the jury, " if there was fraud and collusion between James and Allen M. Walker in taking possession of and holding the negroes after the death of Wm. W. Walker, the statute of limitations did not run in their favor until the discovery of the fraud, and if James S. Walker, the administrator *de bonis non*, commenced his suit within four years after the discovery of the fraud he is not barred by the statute."

The motion for a new trial was refused by the Court, and defendant excepted.

GIBSON, GREEN, and PEEPLES, for plaintiff in error.

SMITH, FLOYD, and B. HILL, *contra.*

*By the Court.*—LUMPKIN, J. delivering the opinion.

I will consider the grounds in the motion for a new trial in their order.

1, 2. Because the verdict was against the law and weight of evidence in the case, and against the charge of the Court.

The evidence in the case was conflicting: rejecting the evidence of the two witnesses, brother and sister, who are proven to have been too young to testify understandingly, as to the facts to which their evidence relates, one of them being three years old only at the time; and the verdict is in accordance with the preponderance of the proof. And as to its being contrary to the law and the charge of the Court, such was not the opinion of the Judge, who presided at the trial; nor is it our opinion.

3, 4, 5, 6. The next four grounds may all be considered together.

Walker vs. Walker, adm'r, &c.

We think the Court was right in not permitting the defend-
ant to read in evidence the appraisement and returns of sales
of property of the estate of Wm. W. Walker, deceased, by his
administrator and administratrix.   The object of this proof
was of a negative character; that is, by showing that the ne-
groes in dispute were not inventoried and sold, with the rest
of his slaves, by his legal representatives, it might be inferred
that they knew they belonged to old James Walker, and not
their intestate.   It would be going very far, we apprehend, in
any case, to allow the title to valuable property to be taken
from minors by an act of omission of this sort, whatever the
motive might be.   But considering the relationship which
existed between these parties, we hardly think the conduct
of the representatives should weigh anything against the ti-
tle of W. W. Walker's estate to these slaves.   The adminis-
trator was the son, and the administratrix the daughter-in-
law of James Walker, who was an aged man at that time.
At the end of the year, after the death of his son, William W.
he claimed the negroes, and took them home with him, not-
withstanding they had been in the peaceable possession of
his son for about eleven years before his death.   Policy, for
fear of offending him, as well as filial respect, might well
have induced these parties so far to acquiesce, as not to resist
his will, and thereby rouse the old man to anger and resent-
ment by inventoring and offering for sale, these slaves with
the rest of the property of the intestate.   Besides, the widow,
was a woman who but imperfectly understood her rights;
and naturally looked to Allen M. Walker, her brother-in-
law, and co-administrator, to do whatever the law required.
And that is not all, she intermarried again in about fourteen
years after the death of her husband, which, by operation of
law, abated her letters of administration; and again, Allen
M. was living with his father and might have supposed that
by continuing in the joint possession of these negroes, upon
his father's place, as he did, that this would be a sufficient
protection of his brother's title.   Under all these circum-

stances we do not think that any inference should be made to the prejudice of W. W. Walker's estate, on account of the failure of the representatives to assert their intestate's title to this property.

It may be that Allen M. Walker connived at the claim of his father. His interest was all on that side. It would be going very far to allow such proof to weaken even, the title of W. W. Walker's child, or children, to these negroes.

As to the appraisement of Nathaniel F. Walker, as the executor, it is very clear that this evidence was properly excluded. James Walker's will was made in 1828, when W. W. Walker was in possession of the negroes. He continued in possession until his death, in 1834. What if James Walker did undertake to dispose of these negroes by his will? It amounts to nothing. There is no evidence that the contents of the will ever came to the knowledge of W. W. Walker; much less that he sanctioned or approved of them. Indeed, until the death of James Walker, in 1849, and the publication of his will, no one knew of the testamentary claim thus attempted to be asserted, and this suit was brought within four years from that time.

[7.] The last ground is, that the Court erred in charging the jury that if James Walker and Allen M. Walker colluded together to defraud the estate of W. W. Walker out of these negroes, that the statute of limitations did not begin to run until after the fraud was discovered.

We see nothing wrong in this charge. The heirs of W. W. Walker, deceased, should not suffer by the fraudulent misconduct of their trustee, and it is not a good reply to say, that he is personally reliable to his *cestui que trust.* Why should not the fraud be made to effect the conscience of his confederate? Shall his title, originating in covin with the trustee, be protected? The tendency of our legislation, as to land titles, is strongly opposed to this doctrine. And it would seem to me that where the question is between an orphan child on the one side, and the orignal parties to the transac-

tion on the other, no interests of third persons being involved, there can be no doubt but the principle was correctly stated by the Court.

Being satisfied with the verdict, and seeing no error, either in rejecting evidence or the charge of the Court to the jury, we do not feel constrained to overrule the discretion of the Court in refusing to grant a new trial in this case; and consequently affirm its judgment.

Judgment affirmed.