*Judgment reversed in part and affirmed in part. Jenkins, P. J., and Bell, J., concur.*

DECIDED SEPTEMBER 16, 1931. REHEARING DENIED OCTOBER 1, 1931.

*Neufville & Neufville,* for plaintiffs in error.
*Houston White, John J. Poole,* contra.

21125. TAYLOR *v.* THE STATE.

Decided September 17, 1931.

*Arnold, Arnold & Gambrell, Samuel D. Hewlett,* for plaintiff in error.

*John A. Boykin, solicitor-general, William Schley Howard, J. W. LeCraw,* contra.

Luke, J. Walter C. Taylor was convicted under an indictment dated May 29, 1930, which alleged that on the first day of March, 1923, he "did unlawfully offer to give to J. A. Beall, a legally qualified councilman of the City of Atlanta, a municipal corporation, four hundred dollars in money as a present and reward offered by accused to said councilman to influence the behavior of the said councilman" in a matter pending before the general council of the City of Atlanta. To this indictment the accused filed a demurrer which was overruled on all its grounds. The demurrer was as follows: "1. Said indictment sets forth no offense under the laws of the State of Georgia. 2. The office of councilman of the City of Atlanta is not such an office as the crime of bribery may be committed in respect to. 3. Further demurring, this defendant says that said indictment only charges that this defendant did 'offer' to give said Beall a certain sum of money to influence the behavior of said councilman Beall in the matter of a license, as therein described, which application for license was depending before the council, and this defendant says that section 270 of the Penal Code, which defines the offense of bribery generally, does not make the mere offering of a sum of money to influence the official action of another the crime of bribery, but makes only a crime the actual and substantive offense of bribing an official to influence him in his official duty, and the only section which makes the offer-

ing of a sum of money a crime is section 271, which does not and can not apply to an officer of a municipal corporation, and only applies, outside of members of the General Assembly, judges and referees, to 'officers of this State,' and a councilman of the City of Atlanta is not an officer of this State." On the trial of the case the defendant was convicted and filed a motion for a new trial, which was overruled. He assigns error on the overruling of his demurrer and on the overruling of his motion for a new trial.

■ In *Payne* v. *State,* 153 *Ga.* 882 (113 S. E. 446), the Supreme Court held that a policeman of the City of Atlanta is an "officer of the State" within the meaning of section 271 of the Penal Code. It was said that the principal duty of a policeman is the preservation of the public peace, and that the public peace is a matter of public concern. "Policemen are clothed with full power of enforcing not only municipal laws and ordinances within their prescribed spheres, but also the laws of the State within their jurisdiction." The court further observed that while they are appointed by a board of the municipal government, "they are appointed under legislative authority authorizing the creation of those boards; and therefore they come within the meaning of 'office of government' or of 'justice' and 'officer of this State,' within the meaning of the sections of the Penal Code now under review." We do not think it necessary to determine in the present case whether the reasoning of the Supreme Court in the *Payne* case, supra, would apply equally to a councilman of a municipality. It may or may not be that such an officer is an "officer of this State" within the meaning of section 271. It is enough to say that under the decision in that case the offense of bribery may be committed either in the manner pointed out in section 270 or in the manner stated in section 271, and that the latter section was intended to fix a penalty for the offense whether committed under either of these sections. The indictment in question contained a sufficient statement of the offense under section 270, and it can not reasonably be contended that the councilman did not have a duty to perform in an "office of government" within the meaning of that section whether or not he was an "officer of this State" within the meaning of section 271.

The indictment does not undertake to specify the character of the office held by the person sought to be bribed, other than to say that he was a councilman of the City of Atlanta, but this was.

sufficient as a matter of pleading, since the character of the office is determined by law and anything further upon this point would have amounted to a mere conclusion of the pleader.

The indictment appears to have been drawn under section 270, or to have been at least sufficient to invoke the provisions of that section, and the provisions of section 271 were not needed except to prescribe and fix the punishment. The offense of bribery as described in each section is a misdemeanor, and it is the law of this State that "the attempt to commit a misdemeanor shall be punished in the same manner as the misdemeanor which was attempted is punishable." Penal Code (1910), § 1066 (7). In other words it is a misdemeanor to attempt to commit a misdemeanor. See 2 Bishop Crim. L. § 88. The contention of counsel for the plaintiff in error that this provision of law is inapplicable to section 270 relating to the offense of bribery is untenable. With practically the same force it might be argued that it was inapplicable to any other offense defined in the Code. Under this construction the indictment in this case did not charge the substantive and complete offense of bribery; but there is no reason why the solicitor-general may not draw an indictment for an attempt to commit an offense, where the evidence will not establish more, rather than to place before the grand jury an indictment for the completed offense and then, if the same is returned, to ask for a verdict for the lesser offense of an attempt. In fact, the former course would appear to be the fairer as well as the wiser policy, from the State's standpoint. Any other practice might tend to confuse not only the defendant, but also the grand jury and the trial jurors as well; and this is true notwithstanding the rule that upon the trial of an indictment for any offense the jury may find the accused not guilty of the offense charged in the indictment, but, if the evidence warrants it, guilty of an attempt to commit such offense, without any special count in the indictment for such attempt. Penal Code (1910), § 1061. This section in express terms recognizes that a person may be indicted for an *attempt* to commit an offense. The court did not err in overruling the demurrer to the indictment.

■ The evidence establishes as a matter of law that the offense charged was barred by the statute of limitations, which limits to two years the period for finding and filing indictments for such

offenses. Penal Code, § 30. The special presentment alleges that the offense was committed in 1923, and the special presentment is dated May, 1930. It alleges also that the offense was unknown until May 22, 1930. This allegation that the crime was unknown is an exception to the limitation of prosecutions provided by § 30 of the Penal Code. In *Bazemore* v. *State,* 34 *Ga. App.* 773 (131 S. E. 177), the Court of Appeals held unqualifiedly that "In a criminal case, where an exception is relied upon to prevent the bar of the statute of limitations, *it must be alleged and proved;*" and in the opinion the court said: "The exception, therefore, is an essential and material part of the accusation, and necessary to be proved. *Hollingsworth* v. *State,* 7 *Ga. App.* 16 (65 S. E. 1077); *Hansford* v. *State,* 54 *Ga.* 55 (3)." And this court reversed the judgment of the lower court on the ground that the evidence was "not sufficient to support the allegation that the offender was not known." It will be noted that this ruling is applicable "in a criminal case" without exception as to "those cases where the offense is against society in general and there is no prosecutor." From that case and many other authorities it would appear that the burden was on the State in any "criminal case" to allege and prove that the offender was not known. See also *Williams* v. *State,* 13 *Ga. App.* 338 (79 S. E. 207); *Flint* v. *State,* 12 *Ga. App.* 169, 172 (76 S. E. 1032); *Hammock* v. *State,* 116 *Ga.* 595 (43 S. E. 47).

However, assuming that the State was required to make only a prima facie case, and that the "presentment containing the exception will *presumptively* establish that the offense or offender was unknown," until it is disproved, as held in the case of *Cohen* v. *State,* 2 *Ga. App.* 689 (59 S. E. 4), cited by the State, we are of the opinion that the defendant completely rebutted this presumption, and did it with the State's witness.

Recognizing the jury's right to pass on conflicting evidence, we base our opinion on *undisputed* evidence only. It is undisputed that J. A. Beall was the man sought to be bribed; that he was a councilman at the time of the offer; that he was a member of the police committee and sworn as a policeman at the time of the offer; that he was a deputy sheriff at the time of the offer; and that he was a member of the grand jury for several different terms between the date of the alleged crime and the date of the special

presentment. The State can acquire knowledge of the crime from one whose special *duty* it is to report it. Beall, having refused the offer of bribery, was in no way implicated criminally, or under any legal restraint from reporting the case or testifying therein. It was Beall's duty (1) in a private capacity, and (2) in an official capacity, to report the offense; and it being his duty to report it, his knowledge was imputable to the State and was knowledge of the State in legal contemplation; and this knowledge of the State through the years was a bar to the prosecution under a presentment dated seven years after the offense (a misdemeanor) was committed.

(1) Duty in private capacity. The offer being made to Beall in person was certainly in his presence and within his knowledge, and § 921 of the Penal Code provides that "a private person may arrest an offender, if the offense is committed in his presence or within his immediate knowledge." This section, though not conclusive, is undoubtedly argumentative on the issue involved, as having the right would at least imply a corresponding duty; and this view is borne out by the holding of this court in *Brown* v. *State*, 6 *Ga. App.* 329 (2) (64 S. E. 1001), wherein it was held that "The statute of limitations does not begin to run in favor of the offender until his offense is known to the prosecutor, or to some one *interested* in the prosecution, or *injured* by the offense." The only possible construction of this decision is that when the offense *is* known to the person injured by the offense, the statute *does* begin to run. Beall was injured by the offense in 1923, seven years before the date of the presentment. He was injured by being insulted, by having his integrity attacked, by an insinuation that he could be bought. It is by no means necessary that he should have sustained physical or financial injury in order to be injured. Numerous cases could be cited where the crime is committed without physical or financial injury to the victim. For instance, in *Bishop* v. *State*, 86 *Ga.* 329 (12 S. E. 641), the defendant cursed his victim, one Saggus, and raised a rail and threatened to strike him. The injury to Saggus was not physical or financial, but the crime was committed. Just so in the instant case. Beall was not injured physically or financially, but he was the injured person, and, under the *Brown* case and many others, the statute begins to run after the crime is known to the injured person. This is as it should be, because the injured person has some motive for reporting the

crime to the State. Another thing shown by the decision in the *Brown* case is that the prosecutor is not the only one whose knowledge would bind the State. It holds that the statute does not begin to run until the offense is known to the "prosecutor" *or* to someone "injured by the offense;" which necessarily means that it does begin to run after it is known to the prosecutor *or* to the one "injured by the offense." It seems to be well settled that if a crime against the public involves also a wrong upon an individual, such as an assault or any other crime in which an individual, who is not a party to the crime suffers, the knowledge of the victim is the knowledge of the State, even though the victim does not represent the State in an official capacity.

(2) Duty in an official capacity. (*a*) Councilman. The undisputed evidence shows that Beall was a member of the council of the City of Atlanta at the time of the offer to bribe, and it can not be reasonably contended that the councilman did not have a duty to perform in an "office of government." The offer was an attempt to influence his vote in a matter concerning the city. If it be contended that Beall was not the one injured but that the city was the one injured, then the authorities are just as well settled that Beall's knowledge was imputable to council; and unquestionably knowledge of the council of the City of Atlanta would be such general notoriety as to make the crime known in a legal sense, and furnish a bar to a prosecution seven years later. The City of Atlanta is a municipal corporation. Beall was a member of the council—the governing board—of this corporation, and his knowledge was imputable to the corporation. In *Williams* v. *State,* 13 *Ga. App.* 340, 341 (79 S. E. 207), this court said: "The State failed to prove that the alleged offense was not barred by the statute of limitations. . . Where it affirmatively appears that a corporation is the party defrauded and the party interested in the prosecution, the State does not carry the burden resting upon it, unless it is affirmatively made to appear that none of these officers *whose knowledge may be imputed to the corporation* knew of the commission of the offense for a period of time exceeding two years prior to the commencement of the prosecution. In other words, it must appear that the prosecution was begun within less than two years from the time that knowledge of the commission of the offense was brought home to any single officer of the corporation

whose *personal knowledge, due to his relation,* could be imputed to the corporation. The State having failed to bring the case within the exceptions set out in § 30 of the Penal Code, the verdict was contrary to law." (Italics ours.)

(*b*) Policeman. The evidence showed that Beall was a member of the police committee of the City Council of Atlanta. This important capacity so closely connected him with the administration of the criminal laws and public affairs of justice that his knowledge of the crime was knowledge of the State. He swore: "I was councilman from the second ward and a member of the police committee, and that committee had charge of the police department. They elected the officers, and the police force work under the police committee. That police committee is really a police authority in Atlanta, because it elected everybody from the chief down; and they try policemen and discharged and reinstated and had supervision of the police force all in their hands." "I have police authority to make arrests, and was sworn as a special city policeman, . . being a member of the police committee of the city. I was sworn in as a policeman, and have power to make arrests." Beall's capacity as a policeman clearly placed him in a position relating to the *public* interest. As stated in *Payne* v. *State,* supra, the Supreme Court held that a policeman of the City of Atlanta is an "officer of the *State* within the meaning of § 271 of the Penal Code. It was said that the principal duty of a policeman is the preservation of the *public* peace, and that the public peace is a matter of *public* concern. "Policemen are clothed with full power of enforcing not only municipal laws and ordinances within their prescribed spheres, but also the laws of the State within their jurisdiction." (Italics ours.) The court further observed that policemen "come within the meaning of 'office of government or of justice' and 'officer of the *State*' within the meaning of the sections of the Penal Code now under review." (Italics ours.) This ruling of our Supreme Court clearly shows the relation of a policeman to the *public* and his official capacity relative to the *State.* This being true, even if bribery be construed as an offense against the public only, a public officer connected with the administration of public laws had knowledge of the offense, and his knowledge was knowledge of the State.

(*c*) Deputy sheriff. On the trial Beall swore: "I am deputy

sheriff of Fulton county, and have been since 1921, under Capt. J. T. Lowry, sheriff of Fulton county. I have a badge, am authorized to carry a pistol, and carry my badge and pistol at times. I was deputy sheriff at the time of this transaction with Mr. Taylor in March, or April, or January, 1923, and was a city officer at the same time. I was sworn as a special deputy sheriff." The duty of a deputy sheriff in reference to the enforcement of State laws is too well known to necessitate a discussion here. If the knowledge of a policeman is imputable to the State, as previously discussed, then, a fortiori, the knowledge of a deputy sheriff is knowledge of the State. In this regard, and because of its particular application to the instant case, we quote the following from a Louisiana case: "Under Rev. St. § 3541, requiring the sheriff to preserve the peace and to apprehend public offenders, his deputy, as his alter ego, is an officer 'having the power to direct a public prosecution' *as affecting the bar of prosecution by prescription."* (Italics ours.) State *v.* Stelly, 126 La. 659 (52 So. 864) ; 16 C. J. 230 (notes).

(*d*) Grand juror. Beall testified: "I was on the grand jury the April and May term, 1927. I served on that grand jury in May, 1927. I have served on the grand jury five or six times, and the May term, 1927, . . for Fulton county. I served that May term, 1927. I served on four or five grand juries. I served in 1927, 1928, 1929, and 1930, and I may have served in 1926. I served in 1927 when Mr. Gregg was foreman, and that grand jury found many true bills." This official capacity and public service of Beall, with his knowledge of the crime, makes such knowledge absolutely imputable to the State, and furnishes a bar to the prosecution. The question at issue is not whether one can be forced to disclose his knowledge, but whether it is his *duty* to do so. If it is his duty, then his knowledge is imputable to the State. The solicitor-general may have knowledge of a crime, and for some reason take no action thereon; yet his knowledge is knowledge of the State, and such knowledge would prevent the State at a later date from pleading that the crime was unknown. The language of the statute (Penal Code, § 834) is unambiguous as to the duty of grand jurors in this regard. It provides that while they are not bound to reveal past offenses, *"it is their duty as jurors* to make presentments of any violations of the laws which they may know to have been committed at any *previous* time, which are not barred

by the statute of limitations." In *Groves* v. *State, 73 Ga.* 208, the Supreme Court said : " Can it be possible that a grand juror, sworn under section 3915 of the Code, 'diligently to enquire and true presentments make of all such matters and things as shall be given you in charge, or shall come to your knowledge,' can not tell his fellow-jurors what has come to his knowledge touching malpractice in office, that they, with him, may look into it, without being a prosecutor or getting somebody else to act as such ? If, after he is sworn, it comes to his knowledge, how can he avoid divulging it to his fellows ? If, before he is sworn, he learned it, and the judge charges him his duty under section 3917 'to make presentments of any violations of the laws which he may know to have been committed at any *previous* time and which are not barred by the statute of limitations,' how can he keep his oath to obey the charge of the court, and not tell his fellows what he knows ?" In *Hansford* v. *State, 54 Ga.* 58, the Supreme Court, in discussing a bar to prosecution because of the offense being known, said : " The defendant may have procured others to act or aid in the commission of the offense, *unknown to the grand jurors* or the prosecutor." This clearly shows that if the *grand jurors* or prosecutor knew of the crime, it was not in a legal sense unknown ; and the knowledge of one grand juror is the knowledge of the other grand jurors. Grand jurors in session should and do impart their knowledge of crimes to their associate grand jurors. The fact that Beall had promised not to disclose his knowledge of the crime in no way relieved him from the duty imposed upon him by law to disclose it. We know of no statute or decision which limits the knowledge of crime imputable to the State to that of the solicitor-general ; and if Beall, in the capacity of a policeman, and deputy sheriff, and grand juror, or otherwise, can defeat the intent of the law by a mere promise, then the same rule would apply to the solicitor-general, and it certainly must be conceded that knowledge of the solicitor-general would be knowledge of the State regardless of any promise he might have made. One can not by a mere promise to a fraternity brother render inapplicable to himself a duty imposed by law.

Beall's knowledge of the offense of an attempt to bribe him by Taylor was such that the offense was known in the sense of section 30 of the Penal Code, and unless Taylor's conduct in requesting silence of Beall altered the situation, the prosecution of Taylor,

which was instituted seven years afterwards, was barred by the statute of limitations. The question then arises as to the effect of Taylor's act in requesting Beall to keep silent in the matter and the agreement between Beall and Taylor by which Beall agreed to keep the matter silent. The statute of limitations upon the prosecution of a criminal offense in Georgia is not purely remedial as is the statute of limitations for a civil action. The time limitation in which a criminal prosecution must be instituted is one of the essential elements of the offense. The criminal offense of bribery, or an offer to bribe, in this State, does not consist alone in the commission of the acts defined in the Penal Code as constituting either of these offenses, but consists in the commission of these acts within the statutory period of limitation. An indictment which fails to allege the commission of an offense within the statutory period of limitation is fatally defective and sets out no offense against the laws of the State. A conviction upon such an indictment is void. See *McLane* v. *State*, 4 *Ga.* 335, 340. It would seem, therefore, that, irrespective of any conduct on the part of the perpetrator of an act that might constitute a crime which induced the officers or agents of the State who were cognizant of the act and chargeable with the prosecution to defer action until after the expiration of the period of limitation, an act which does not constitute an indictable offense by reason of the statute of limitations would not constitute a crime and become an indictable offense merely because the prosecution of the offense was deferred at the request and instigation of the perpetrator. In Morrison *v.* B. & O. Railroad Co., 40 App. D. C. 391 (Ann. Cas. 1914C 1026), the Court of Appeals of the District of Columbia held that the time within which suit must be brought under the Federal employer's liability act is a condition to the right of the plaintiff to sue, and is not a matter going purely to the defendant's remedy, and that the employer's fraud in inducing the postponement of the institution of a suit until after the expiration of the period would be of no avail to the plaintiff.

Assuming, however, for the sake of the argument, that the statute which provides for a time limitation upon the prosecution of a criminal offense is purely remedial and is a mere personal right of the defendant which he can insist upon or abandon, as may suit his purpose, he can certainly rely upon this right as a defense to a

criminal prosecution unless he has sacrificed it by contract or by conduct amounting to a waiver or estoppel. Where the defendant in a civil action has made no contract, nor given "a new promise" or acknowledgment by which he relinquishes his right to insist upon the statute of limitations, his right to insist upon the statute is not barred except by fraud. Civil Code (1910), § 4380. Such fraud must be actual. *Austin* v. *Raiford,* 68 *Ga.* 201; *Anderson* v. *Foster,* 112 *Ga.* 270 (37 S. E. 426); *Frost* v. *Arnaud,* 144 *Ga.* 26 (85 S. E. 1028). Where a defendant has by fraudulent conduct induced a plaintiff to defer action until after the period of limitation, or has promised not to rely upon the statute, it has been held, on equitable grounds, that the defendant is estopped from pleading the statute. 37 C. J. 725 et seq. A mere request by the defendant to the plaintiff before the expiration of the statutory period for the bringing of suit, to defer action until after the expiration of this period, will not, where no fraud is perpetrated on the plaintiff, operate to estop the defendant from pleading the statute of limitations to a suit brought after the expiration of the statutory period. In 37 C. J. 727, it is said: "Statements calculated to dissuade a litigant from beginning action and not designed to induce its postponement merely will not, in the absence of fraud, estop the party making them from availing himself of the plea of the statute of limitations in the event of subsequent prosecution of such action. Mere reliance by the creditor on the debtor's promise to pay if not sued does not estop defendant. He is not estopped by having put plaintiff off with a mere request for delay." In *Hill* v. *Hilliard,* 103 N. C. 34 (9 S. E. 639), it was held that "The indulgence of a debtor by the creditor, at the special request of the debtor, will not prevent the running of the statute of limitations. To prevent the statute's being a bar, there must be an agreement, express or implied, on the part of the debtor, that he will not plead the statute." In Bank of Tennessee *v.* Hill, 10 Humph. (Tenn.) 176 (51 Am. D. 698), it was held that a "Court of Chancery is as much bound to give effect to statute of limitations as a court of law, and will not prohibit the use of this defense in a court of law except in plain cases of a fraudulent abuse of the advantage of the lapse of time gained by the party seeking to use it; but a mere request to delay suit, or to institute suit against another, instead of the person making the request, does not constitute such a case." In Cole-

man v. Walker, 3 Metc. (Ky.) 65 (77 Am. D. 163), it was held that "Request to payee for indulgence to payor of note does not hinder or obstruct his legal rights, and can not preclude the sureties from the protection of the statute if the indulgence run for seven years." Klass v. Detroit, 129 Mich. 35 (88 N. W. 204, 95 Am. St. R. 407); McKay v. McCarthy, 146 Iowa, 546 (123 N. W. 755, 34 L. R. A. (N. S.) 911); Sullivan v. North Pratt Coal Co., 205 Ala. 56 (87 So. 804); Cameron v. Cameron, 95 Ala. 344 (10 So. 506); Monroe v. Herrington, 110 Mo. App. 509 (85 S. W. 1002); Andreae v. Redfield, 98 U. S. 225 (25 L. ed. 158). The Supreme Court of our own State in *Ryal* v. *Morris,* 68 *Ga.* 834, where, as appears from the record, the maker of a promissory note given for the purchase-money of land insisted as a condition precedent to the payment of the note that the holder locate the land lines, and the holder undertook a compliance with the maker's request, but before completing the surveying of the land lines the period of limitation expired, it was held, in a suit afterwards brought against the maker, that the defendant had not, by his conduct, been relieved of the bar of the statute of limitations. The decision in that case, as reported in the headnote, reads as follows: "That a debtor insisted upon having certain land lines located before paying the note given by him for the purchase-money of such land, and the creditor thereupon waited until the note was barred by the statute of limitations, will not relieve the bar of the statute, the note itself being absolute and containing no condition in regard to lines." In *Georgia Railroad &c. Co.* v. *Kent,* 92 *Ga.* 782 (19 S. E. 720), it was held: "An action for personal injuries against a railroad company is barred after the lapse of two years from the time the right of action accrued; and where the person injured, in consideration of a contract by the company to do certain things for his benefit and to give him employment for life, agreed not to bring suit and refrained from so doing for nearly eight years, his right of action is not relieved from the bar of the statute, although the company, in making the contract with him, did so for the purpose of deterring him from bringing his action within the time prescribed by law, it appearing also that the company had complied fully with all its undertakings other than that of giving the plaintiff employment for life, and had in fact employed him for more than seven years before he was discharged."

Nothing in Taylor's conduct requesting the silence of Beall as respects Taylor's alleged attempt to bribe Beall, and the agreement between him and Beall that Beall would keep the matter quiet, constituted fraud. Taylor made no promise, either express or implied, not to plead the statute of limitations against the offense if the prosecution should be deferred until after the expiration of the period of limitation. Taylor's request for silence amounted to no more than a request of Beall not to prosecute him, and Beall's conduct in keeping silent about the matter and refraining from taking any steps towards the prosecution of Taylor was not induced by any fraudulent representations or promises by Taylor. The suggestion that Beall's silence in the matter until after the expiration of the statutory period of limitation amounted to the stopping of the clock by Taylor is not an accurate simile. Taylor did not stop the clock. Beall stopped it. The clock belonged to Beall and not to Taylor. It was in Beall's hands and he had control of it. Taylor had no power to stop the clock, but merely requested Beall to stop it. Taylor had no control over the stopping or the starting of the clock, and it was Beall's failure to further comply with Taylor's request when Beall seven years later started the clock which he himself had stopped.

In view of the authorities and the record in this case we are impelled to hold that the alleged crime is barred by the statute of limitations. We recognize fully the urgent necessity of using every legitimate means to deter crime. However, of even more importance than the punishing of a single individual is the right of every citizen of the commonwealth to have a fair trial according to the rules of law,—a legal trial. To invade that right is to strike at the very foundation of our system of jurisprudence, to endanger society, and, by furnishing a precedent that may be used as a tool, to jeopardize the life or liberty of innocent persons who may in the future come within the toils of the law. We are aware of the maxim, judex damnatur cum nocens absolvitur, but we are equally cognizant of the more vital maxim, judex debet judicare secundum allegata et probata.

It appearing from undisputed evidence that the offense was known prior to the expiration of the statutory period of limitation to one whose special duty it was to report it, and such knowledge being imputable to the State, and being knowledge of the State in

legal contemplation, and the special presentment being found after the expiration of the statutory period, a prosecution for the offense was barred by the statute of limitations, and the court erred in overruling the motion for a new trial.

*Judgment reversed. Stephens, J., concurs. Bell, J., dissents.*

BELL, J., dissenting. I dissent only from what is said in the second division of the decision, and from the judgment of reversal.

This case arose by a special presentment in the nature of an indictment which was returned on May 29, 1930, and which alleged that the offense was committed on March 1, 1923, but that the crime was "unknown" until May 22, 1930. Bribery is an offense against society in general and strikes at the very foundation of government. It bears a similarity to the offense of vote buying, and the remarks of Judge Russell, formerly a member of this court, but now Chief Justice of the Supreme Court, in regard to a case of that character is apropos: "If there is any law which should be more zealously enforced than another, it is that which protects the purity of the ballot-box; and if there is one point which should be more especially guarded against than any other, it is the corrupt use of money in elections. There is no safety for the State when money, and not men, does the work. Our law justly abhors the degraded bribe taker, and the no less degraded, though more opulent, bribe giver. . . The State should be required to properly charge and clearly prove the commission of the offense; but where a jury finds that the evidence establishes the charge as made, neither hair-splitting distinctions nor refined subtleties should be more effectual in setting aside the jury's finding than in those offenses more generally considered of greater import. Homicide generally destroys a single life; bribery at the ballot-box destroys the very foundation of the whole State." *Lepinsky v. State,* 7 *Ga. App.* 285, 291 (66 S. E. 965). The same may be said of any other form of bribery as defined by the penal laws.

The offense is not against an individual or individuals. It may be true that one to whom a bribe is offered receives a personal offense, as an affront, which is not shared by the general public, but from a legal standpoint no one citizen, other than the offenders, is more affected by or interested in the offense of bribery than any other citizen or citizens. In Fall *v.* U. S., 49 Fed. (2d) 506, the Circuit Court of Appeals, quoting from People *v.* LaFaro, 250 N.

Y. 336 (165 N. E. 518), said, "The gist of the crime of bribery is the *wrong done to the people* by corruption in the public service.". (Italics mine.) See also C. J. 402. In *Cohen* v. *State, 2 Ga. App.* 689, (supra), this court, again speaking through Judge Russell, said: "In those cases where the offense is against society in general and there is no prosecutor, the return by the grand jury of a presentment containing the exception will presumptively establish that the offense or offender was unknown, until the statement is denied by evidence on the part of the defendant." This statement was apparently a mere dictum in the *Cohen* case, but in the opinion of the writer it expresses a perfectly sound and wholesome rule of law. In *Mangham* v. *State,* 11 *Ga. App.* 427 (3), 438 (75 S. E. 512), it was said: "The indictment alleged that the offense as described therein was 'unknown until on or about the first day of January, 1911,' and this allegation was sufficient to make an issue, and evidence relating to this issue was submitted to the jury, and there was sufficient evidence to show that the offense was not known until 1911, when an audit of the books of the mills was made. Besides, this was a special presentment by the grand jury, and the allegation that the offense charged therein was unknown was sufficient to cast upon the defendant the burden of showing that it was not true."

Here was a direct application of the principle stated in the *Cohen* case, supra. The statement was not an obiter dictum in the *Mangham* case, although, as indicated in *Williams* v. *State,* 13 *Ga. App.* 338, 340 (79 S. E. 207), it involved an additional reason for the court's judgment. Unless this court will overrule or repudiate the ruling in the *Mangham* case, there is no escape from the proposition that, as regards the instant special presentment, the allegation made therein by the grand jury that the offense was unknown should be taken as prima facie true and sufficient to cast upon the defendant the burden of showing that it was not true.

A further contention of the defendant is, however, that the evidence for the State established without dispute that the offense was in fact barred, and for this reason it is insisted that the verdict of guilty was unauthorized and should have been set aside on the general grounds of the motion for a new trial. The evidence showed that the councilman to whom the alleged bribe was offered was at the time a member of the police committee of the City of

Atlanta, and, being a member of this committee, was sworn in as a policeman with power to make arrests. He was also commissioned as a deputy sheriff of Fulton county, and, in addition to all this, he served several times as a member of the grand jury between the date of the alleged offense and the return of the indictment. It is further claimed that he had a special interest in the offense alleged to have been committed, being the officer to whom the alleged bribe was offered and the person whose honor was thus directly assaulted. It is therefore insisted that the knowledge of the person to whom the offer was made was knowledge of the State, since, according to the same contention, it was his public duty, in any one of several capacities, to discover the offense and bring about a prosecution.

It seems that my colleagues are of the opinion that the knowledge possessed by the councilman in any one of the several capacities named should be imputed to the State so as to make the offense known and to render the statute of limitations applicable. On the contrary, it is my opinion that the knowledge of the councilman was not necessarily and as a matter of law the knowledge of the State, no matter in which of the several capacities such knowledge may have been possessed or acquired by him. For the convenience of any one who may happen to read this dissent, I will follow the outline adopted by the majority in dealing with these questions:

(1) Duty in private capacity. Section 921 of the Penal Code, which provides that a private person may arrest an offender, if the offense is committed in his presence or within his immediate knowledge, has no bearing whatever upon the question at issue. Certainly it would never do to say that an offense is known to the State merely because some one private citizen happens to know of it and might have arrested the offender as for an offense committed in his presence. If such were the law of this State, it would be a practical impossibility for the State ever to prove that an offense was "unknown," notwithstanding the law contemplates that an exception to the statute of limitations may be raised and established by allegation and proof of such fact.

Nor did the councilman occupy the position of one interested in the prosecution or injured by the offense. In *Brown* v. *State,* 6 *Ga. App.* 329 (2) (64 S. E. 1001), it was held that the statute of

limitations does not begin to run in favor of the offender until the offense is known to the prosecutor or to one interested in the prosecution or injured by the offense. The councilman did not institute, and was not interested in, the prosecution; in fact there was no prosecutor, but the case arose upon a special presentment. Upon the question of injury, as I have endeavored to show above, the offense of bribery affects all the innocent citizens alike, and, in a legal sense, there was no special injury to the councilman, although, being the officer to whom the bribe was offered, the transaction, as to him, may have amounted to a personal insult and aroused a moral indignation not experienced by any other person or persons. The implication that he could be purchased doubtless made him angry, but it did not constitute any offense upon his person, property, or reputation, and he was not in a legal sense injured thereby.

The rule that knowledge of a person interested in or injured by an offense is knowledge of the State can be applicable only to private offenses such as those affecting the person, property or reputation of an individual, as assault or assault and battery, theft, robbery, libel and the like. In the majority opinion the case of *Bishop* v. *State,* 86 *Ga.* 329 (12 S. E. 641), is cited for the purpose of showing that a person may be injured under the rule stated in the *Brown* case, although he has sustained no physical or financial injury. The *Bishop* case involved a prosecution for the offense of assault, a crime which could be perpetrated in no other way than by an attempt to commit a violent injury upon the person of another; while the present case was a prosecution for the offense of bribery, which in its essential character is not directed at a particular individual but is aimed at the institution of government through an individual as a mere incident of its perpetration. Two cases could hardly be more different or unlike in principle.

The fact that Beall as a private individual knew of the commission of this offense did not make it known to the State within the meaning of the exception to the statute of limitations.

(2) Duty in an official capacity.

(a) Councilman. In the majority opinion the case of *Williams* v. *State,* 13 *Ga. App.* 338 (79 S. E. 207), is cited as authority for the proposition that knowledge of the councilman, in his official character as such, was imputed to the City of Atlanta, and in turn became the knowledge of the State, within the meaning of

the statute of limitations. The *Williams* case was a prosecution for the offense of cheating and swindling, in the defrauding of a commercial corporation. The crime was therefore one of a private nature and the corporation was the injured or aggrieved party. The ruling in that case to the effect that the State did not carry the burden of proving the allegation that the offense was unknown, in the absence of evidence that it was unknown to all the officers whose knowledge might be imputed to the corporation, can have no relevancy as authority on the question of whether in a prosecution for the offense of offering a bribe to an officer of a municipal or public corporation the knowledge of the officer should be imputed to the State.

The fact that the person attempted to be bribed was a councilman or officer of the municipal corporation did not make the corporation the aggrieved party within the reasoning of the *Williams* case. The offense was not against the City of Atlanta as a person or as a corporate entity, but was essentially one of a public nature and against society in general. The City of Atlanta was not more concerned than any citizen, and, as stated above, the councilman himself was not in a different situation. If the defendant had been guilty of a larceny or embezzlement of the city's money or property, a very different question would have been presented, and the *Williams* case might have been in point.

It seems to me that a crime of this nature could have become known to the State within the meaning of the statute of limitations only by a common notoriety, or by the knowledge of some officer whose duty it was to represent the State in initiating a prosecution, or by the actual commencement of such a prosecution by some private individual or citizen. Neither the councilman nor the City of Atlanta represented the State, and neither was interested in or aggrieved by the offense in question. Hence, it could not be said that either was the instrument or agent of the State for the purpose of acquiring or possessing knowledge of such offense. If the councilman had reported the transaction to the legislative body of which he was a member, this circumstance might have bound the State as by common notoriety, but not otherwise. Upon his failure to do so or to take other steps towards making the offense known, it remained a matter of secrecy within his own breast, as a private citizen. I have already dealt sufficiently with the effect of his knowledge in this capacity.

In practically all that I am saying in this dissent I consider and treat the offense of bribery or of offering a bribe as a public offense, affecting all the citizens alike, and in which no individual or entity is more interested than another. This is a distinction which my colleagues either decline altogether to recognize or else regard as having no substantial bearing upon the legal questions presented. In my own opinion it is of very great importance, and I think that I am not without authority for this view, although in a sense all crimes are offenses against the State or society, and as such may be classed as public offenses.

(b) Policeman. The evidence showed that Beall as a member of the council was made a member of the police committee, and that in virtue of such position he was sworn as a police officer and had power to make arrests. In the majority opinion it is held that Beall's knowledge as a policeman was imputed to the State so as to fix a time from which the statute of limitations began to run. Can it be the law that the knowledge of any one of the several hundred or thousand policemen in the cities, towns, and villages of this State may in every case be imputed to the State of Georgia, for the purpose of setting off the statute of limitations, no matter with what secrecy or concealment the knowledge may be kept by the particular policeman who happens to possess it? It seems to me that merely to ask this question is a sufficient argument for a negative answer. I am certainly unwilling to hold that it should be answered in the affirmative. My associates have quoted from the decision in *Payne* v. *State,* 153 *Ga.* 882 (113 S. E. 446), for the purpose of showing the powers of police officers in enforcing the laws of the State within their jurisdiction. The question presented for decision in the *Payne* case was whether a policeman is "an officer of this State" within the meaning of section 271 of the Penal Code having reference to the subject of bribery. See *Payne* v. *State,* 29 *Ga. App.* 156 (114 S. E. 226). The Supreme Court was not called upon to decide, and doubtless did not have in mind, any question as to the authority of a police officer to acquire and possess knowledge and information for the State of Georgia to the extent of fixing a time from which a statute of limitations would become operative, and, notwithstanding the broad language of that decision, I can not subscribe to the proposition that a police officer is invested with such power to initiate prosecutions in behalf of

the State, or is such a keeper of the public conscience, that his knowledge shall, in all circumstances, be imputed to the State for the purposes of the statute of limitations.

The power of a police officer thus to bind the State might perhaps exist in particular circumstances, but such could not be true as a matter of law under the facts of the present case, in which the evidence authorized the inference that Beall was a police officer only for a special purpose, relating to the more adequate discharge of his duties as an officer of the City of Atlanta, to wit, as a member of the police committee of the board of councilmen. I will refer again briefly to this matter in the next subdivision of this opinion.

(c) Deputy sheriff. A more difficult question arises in connection with Beall's duty and authority as a deputy sheriff, but even here I am of the opinion that the question of whether his knowledge should be imputed to the State was dependent upon an issue of fact, the solution of which was a matter for the jury.

A deputy sheriff may be charged with the same duties and responsibilities as the sheriff under and by whom he is appointed and commissioned, and, hence, may be invested with a very large and comprehensive authority as the alter ego of the State in the preservation of the public peace. Section 4914 of the Civil Code, after enumerating the several statutory duties of sheriffs, declares that they are "to perform such other duties as are or may be imposed by law, or which necessarily appertain to their offices." Since Georgia is a common-law State, a sheriff of this State may have the same duties which devolved upon this officer at common law, except where such duties have been modified by statute. At common law a sheriff had the power and duty to apprehend and commit "all traitors, felons, and other misdoers," and his authority was perhaps of such degree and character that his knowledge of the commission of an offense might have been imputable to the State, where the question of the State's knowledge was a material issue. 1 Cooley's Blackstone (4th ed.), 343; 24 R. C. L. 916; State v. Reichman, 135 Tenn. 653 (188 S. W. 225, Ann. Cas. 1918B, 889). But the evidence here authorized, if it did not indeed demand, the inference that Beall was only a nominal deputy sheriff, in that he was appointed merely in virtue of his office as a member of the police committee of the city council and that he was not expected either by the sheriff or other authorities to assume the general

duties of an arresting or peace officer. There is no evidence that he ever made an arrest of any sort, or ever attempted to do so, or that he ever served or executed any writ or process of any kind whatsoever, but the evidence well warranted the conclusion that he became a deputy sheriff only for the purpose of enabling him the more effectively to discharge the duties of his office as a member of the police committee of the city council, by adding and exercising the powers of a deputy sheriff, where necessary for this purpose. It is inferable that he intended to assume the authority of a State officer only in so far as he might be aided thereby in the discharge of his duties as a municipal officer, and that to all other intents and purposes he was a deputy sheriff in name only.

Is the State to be bound as a matter of law by everything that a deputy sheriff may know, merely because the sheriff has appointed and commissioned some person as a special deputy for a particular purpose, and without any intention or expectation that such person shall assume the general duties of a State officer? I do not think so. In the circumstances stated it is my opinion that the jury were authorized to find that knowledge possessed by Beall was not imputable to the State as through a deputy sheriff so as to render the statute of limitations operative.

What I have just said as to the official character of Beall as a deputy sheriff will apply equally to his authority and responsibility as a police officer.

(d) Grand. juror. Nor should the previous knowledge of a single grand juror be accounted as information to the body of which he was a member, where he failed for any reason to disclose the facts to his fellow members. The oath of a grand juror as prescribed by section 829 of the Penal Code binds the juror to make inquiry and presentment only of such matters as shall be given in charge or as shall come to his knowledge "touching the present service;" and section 834 provides that "whilst grand jurors are bound only to notice or make presentments of such offenses as may or shall come to their knowledge or observation after they shall have been sworn, yet they have the right and power, and it is their duty, as jurors, to make presentments of any violations of the laws which they may know to have been committed at any previous time, which are not barred by the statute of limitations."

The decision in the case of *Groves* v. *State*, 73 *Ga.* 205, as quoted

in the majority opinion, carries no implication that the State would be bound by the private knowledge of a single grand juror as to the previous commission of some offense, notwithstanding he may have failed to perform his duty to "tell his fellows what he knows." The principal question in that case was whether, as to the prosecution of certain officers for malpractice, the law which provided that the officers should first be given a hearing before the grand jury contemplated that the power of the grand jury should be limited to cases in which there was a prosecutor.

Where a citizen happens to have knowledge of an offense, but elects not to make it public or to present it to some officer of the State having the power and duty to institute a criminal prosecution, it is unreasonable to say that the State becomes possessed of such knowledge merely in virtue of the fact that the citizen is thereafter selected and sworn as a grand juror. Cf. In re *Lester*, 77 *Ga.* 143, 147. The evidence in the present case showed without dispute that the councilman did not disclose his knowledge of the defendant's offense during any of his service as a grand juror. The offense therefore did not become known to the body of grand jurors or to any official whose knowledge should be imputed to the State, in consequence of the service of the councilman for several terms as a member of the grand jury.

But in view of other evidence in the record, everything that I have said above in this dissent may be cast aside as so much chaff, and there is still ground upon which to sustain the jury's finding on the question of limitation. Reference is here made to the testimony to the effect that the defendant, upon receiving a cold response from the councilman, immediately sought a compact of secrecy based upon friendship and a common membership in certain fraternal orders. According to the evidence of the councilman, the defendant immediately said to him, "Don't get on your ear; we are your friends here at the city hall and we trade with you, and there is no use to cause a great big commotion. . . I will say no more about it, and you need not say anything." The councilman then promised him that he would not, and the defendant said, "Put it there," and they shook hands. The councilman in further explaining his reason for not disclosing the offense stated that he agreed with the defendant to be bound in secrecy by the "Shrine and Masonic pin." The jury were authorized to

accept the testimony of this witness as to the truth of the transaction, and it must be so treated by this court, in view of the verdict.

The defendant contends that this evidence fails to show any valid excuse for the failure of the councilman to make known the offense or to institute a prosecution. This is doubtless true, but the dereliction in this respect was the result of an agreement sought and obtained by the defendant, and he can not now take advantage of a secrecy for which he was directly responsible. The fact that the crime was concealed for a long period of time was the result of a covenant which the defendant himself proposed, and upon this point he ought to be satisfied that the agreement worked well as long as it did; at least after thus taking *active and successful* steps to conceal the offense, he can not take advantage of his own wrong in this respect. Estoppels are not entirely unknown to the criminal law. *Howard* v. *State,* 115 *Ga.* 244 (4), 253 (41 S. E. 654); *Quattlebaum* v. *State,* 119 *Ga.* 433 (2) (46 S. E. 677); *Hill* v. *Nelms,* 122 *Ga.* 572 (2), 573 (50 S. E. 344); *Matthews* v. *State,* 125 *Ga.* 248 (54 S. E. 192); *Price* v. *State,* 137 *Ga.* 71 (5) (72 S. E. 908); *Partee* v. *State,* 19 *Ga. App.* 752 (3, 4) (92 S. E. 306); *Hamilton* v. *State,* 24 *Ga. App.* 694 (102 S. E. 43).

There is another view of the same evidence, in consideration of which we are led to the same conclusion. With no intention to reflect needlessly upon the character or reputation of the councilman who became involved in the transaction with the defendant, I think it clear that the jury were authorized to find from his evidence that instantly upon the commission of the offense he entered into a virtual conspiracy with the defendant to prevent the offense from becoming known. Although the combination was an improper and illegal one, it appears to have been kept as if sacredly inviolate, in that all the subsequent silence on the part of the councilman was inferably due to the pledge which he had thus taken with the defendant. As a private citizen and as a member of the council of the City of Atlanta he kept the offense secret. As a police officer and a deputy sheriff he refrained from making an arrest and preferred no charges. Sworn and rendering service several times as a member of the grand jury, he made no presentment and did not divulge the facts to his fellow grand jurors.

If knowledge on the part of the councilman in any capacity could

be said to be the knowledge of the State, in the sense that the offense was not unknown within the meaning of the exception to the statute of limitations as contained in section 30 of the Penal Code, the imputation of such knowledge must be founded, in the last analysis, upon the theory of principal and agent, for if the councilman was in no sense the agent and representative of the State for the purpose of instituting a prosecution, it could not be said that the State would be bound by the information concealed within his breast. Cf. *Deariso* v. *Mobley,* 38 *Ga. App.* 313 (2), 322 (143 S. E. 915). The State is bound by the acts of its officers only upon the theory of agency, and in the instant case it can not be said that the knowledge of the councilman was the knowledge of the State, without holding that the councilman was the agent of the State for the purposes in question.

The Code provides that "where an agent conspires with the other party, his principal is not bound thereby, nor charged with knowledge of facts thus acquired by his agent." Civil Code (1910), § 3600. See also, in this connection, *Pursley* v. *Stahley,* 122 *Ga.* 362 (50 S. E. 139); *Faircloth* v. *Taylor,* 147 *Ga.* 787 (4) (95 S. E. 689); *Loftin* v. *Great Southern Home Benevolent Asso.,* 9 *Ga. App.* 121 (2) (70 S. E. 353). Although the principle here alluded to is one generally applicable in civil cases, I am unable to perceive any good reason why it may not be applied with equal force in the case of an offender against the criminal law who is seeking to charge the State with the knowledge of another who might otherwise be regarded as the agent of the State, but with whom the defendant has successfully colluded against bringing the offense to light.

In 2 C. J. 871 it is said: "The rule charging the principal with his agent's knowledge is established for the protection of those who deal with the agent in good faith. If, therefore, the third person acts in collusion with the agent to defraud the principal, the latter will not be chargeable with any information which the agent receives pertaining to the transaction, and this applies with greater force where the third person instructs the agent, or enters into an agreement with him, not to communicate his knowledge to the principal."

In case of private offenses, the fact that the aggrieved party may have entered into an agreement with the offender to conceal the

crime would undoubtedly be inoperative to toll the statute. But the rule should be otherwise as to an offense against society in general, such as an offer to give a bribe, since in the latter case the person to whom the bribe was offered would not be so injured by the offense, and would have no such special interest in the prosecution, that his knowledge should be imputed to the State, notwithstanding his infidelity in conspiring to keep the offense hidden.

In the instant case the evidence showed without dispute that the councilman was the only person or official who had any knowledge of the offense until shortly before the return of the special presentment, and it thus appears that the allegation that the offense was unknown until that time was abundantly if not conclusively established by the evidence. So, the verdict as to this feature of the case should be upheld even regardless of the rule as laid down in *Cohen* v. *State,* 2 *Ga. App.* 689 (supra), and as reaffirmed in *Mangham* v. *State,* 11 *Ga. App.* 427 (3) (supra), to the effect that in those cases where the offense is against society in general, and there is no prosecutor, the allegation that the offense was unknown is within itself sufficient to cast the burden of evidence upon the defendant as to that issue.

I can not agree with the statement of counsel for the plaintiff in error that the clock of the statute of limitations began to say "tick-tock, tick-tock" instantly upon the happening of the transaction in question. The defendant effectually stopped the clock of the statute when he colluded and intermeddled with the State's agent, if Beall was such, and obtained a pledge of secrecy which prevented the machinery of the law from becoming operative. My associates deny that Taylor stopped the clock, and say that Beall himself stopped it. They suggest also that the clock belonged to Beall, and not to Taylor. This last statement is inconsistent with their principal theory, because they have based their entire decision upon the proposition that the clock belonged not to Beall but to the State, in that the mind and knowledge of Beall were the instruments and agencies of the State so far as the question of limitation was concerned.

To continue the figure, whether it be apt or ever so inapt, it is true that Taylor himself did not actually stop the clock, but he procured it to be done by the influence which he positively and affirmatively exercised over the person upon whose information and knowledge depended a prosecution.

My associates have cited a line of civil cases from this and other jurisdictions to the effect that a mere request for indulgence to a date beyond the expiration of the period of limitation would not estop the defendant from pleading the statute, where no fraud was perpetrated on the plaintiff, and that to prevent the statute from operating as a bar there must be an agreement express or implied on the part of the debtor that the statute will not be pleaded. In each of these cases the parties were apparently dealing with each other as principals, and none of such cases involved a situation where one of the parties overreached the agent of the other and prevented the principal from acquiring knowledge of the existence of the cause of action. If the defendant here had in some way become civilly liable to the City of Atlanta, and the only person having knowledge of the cause of action was Beall, the councilman, would the statute of limitations run against the city, where the defendant had by persuasion and collusion obtained a bond of secrecy from the councilman, as a result of which the existence of the cause of action was unknown for sometime to other officials of the municipality? I hardly think so; and the answer would not be different if the question should more accurately carry the name of the State of Georgia instead of the City of Atlanta as the person in whose favor the liability accrued. Such conduct of the defendant would consist of a concealment by more than mere silence, and would amount to a fraud on his part. *American National Bank* v. *Fidelity & Deposit Co.*, 131 *Ga.* 854, 859 (63 S. E. 622, 21 L. R. A. (N. S.) 962) ; *Walker* v. *Walker*, 25 *Ga.* 76 (4) ; *Hoyle* v. *Jones*, 35 *Ga.* 40 (2) (89 Am. D. 273) ; Civil Code (1910), § 4380. In *Walker* v. *Walker*, supra, the Supreme Court held: "If a trustee collude with a third person to defraud his cestui que trust, the statute of limitations does not begin to run until after the fraud is discovered." The facts of the *Walker* case show that the trustee referred to was an administrator, and that the cause of action was against one who held under the third person with whom the administrator colluded. The decision in that case is direct authority for the position which I take in the case at bar.

With all deference to my colleagues, it seems to me that each and all of the cases to which I have just referred are without the slightest relevancy in the solution of the present case.

I am also of the opinion that the majority have added noth-

ing whatsoever to the strength of their position by the argument that the time limitation in which a criminal prosecution must be instituted is one of the essential elements of the offense, which, as they say, consists not alone in the commission of the acts condemned by law as a crime, but also in the commission of these acts within the statutory period of limitation. Cf. *Atlantic Log & Export Co.* v. *Central of Georgia Ry. Co.,* 171 *Ga.* 175 (4), 180 (155 S. E. 525). I do not agree that this is a correct definition of a crime, or a proper construction of the statute of limitations. Penal Code (1910), §§ 30, 31. Neither the decision in *McLane* v. *State, 4 Ga.* 335, 340, which is the principal case cited, nor the language of the statute which fixes the periods of limitation, can, to my mind, reasonably lead to such a conclusion. Judge Russell did not so view the law in the *Cohen* case, reference to which I have heretofore made. In the decision in that case he said: "In the opinion of the writer one reason why the same particularity is not required [in the indictment] in the statement of the exception is that the exception which brings the defendant to trial is not a part of the State's case. It does not involve the question of guilt or innocence. It is not a plea to the merits. It can exist with admitted guilt." But even to grant, for the sake of the argument, that the time element is ordinarily an essential ingredient of the offense, it is yet provided by law that allegation and proof that the offense was unknown will constitute a good substitute for such ingredient, and according to my own opinion this element was sufficiently supplied by the allegation and the evidence in the present case.

In the motion for a new trial other questions were raised by the plaintiff in error which my colleagues did not find it necessary to deal with, in the view which they took of the question of limitation. I have carefully examined all grounds of the motion for a new trial, and would hold that no reversible error was committed. I am therefore dissenting not only from the conclusion reached by my collagues in the second division of their opinion, but also from the judgment of reversal. It is my opinion that the evidence authorized the verdict of guilty, that no error of law was committed, and that the judgment of the court below should be affirmed.