### 2061. LEPINSKY v. THE STATE.

1. The offense was charged in the language of the statute, and there was no error in overruling the demurrer based upon the ground that the indictment was duplicitous.

(a) In an indictment charging the offense of buying a vote it is immaterial that the voter has not registered.

(b) Taken in connection with the other allegations of the indictment, the language "was concerned in the buying of a vote" is not vague or indefinite. The name of the voter being stated in the accusation, the transaction was sufficiently identified.

2. The instructions of which complaint is made are correct in the abstract; and if instructions more full and explicit were required, they should have been requested. The complaint that the charge of the court was misleading is not established, where the record does not contain the entire charge.

3. The evidence in behalf of the State establishing the fact that one Buckley was the defendant's agent and authorized by him to pay certain money to the voter sought to be debauched, evidence of the payment of the money by Buckley to the voter was properly admitted, even though the transaction occurred out of the presence of the defendant.

4. The fact that a primary election was held on a certain day to select nominees of a certain political party may be proved by parol. No written record of the call for a primary election is required by law to

be kept; nor is it required that there shall be a written order calling a primary. Where an election has been regularly held and the successful candidates duly declared to be nominated, especially where there is no contest of the result, the primary election will be presumed to have been legally called, and to have been held according to law.

Accusation of misdemeanor; from city court of Savannah—Judge Freeman. July 10, 1909.

Submitted October 5, 1909.—Decided January 15, 1910.

*E. H. Abrahams, Neyle Colquitt, Cann, Barrow & McIntire,* for plaintiff in error.

*Walter C. Hartridge, solicitor-general, Anton P. Wright,* contra.

RUSSELL, J. The plaintiff in error was convicted, in the city court of Savannah, of the offense of buying a vote, in violation of the act of 1905 (Acts of 1905, p. 111). This statute (which is amendatory of the act of 1904) reads as follows: "Any person who shall either buy or sell, or offer to buy or sell, or in any way be concerned with buying or selling, or contribute money for the purpose of buying a vote in any primary election in this State, whether the election shall be for nominees for State, county, municipal or Federal officers, shall be deemed guilty of a misdemeanor, and upon conviction shall be punished as prescribed in section 1039 of the Penal Code of 1895." The accusation in this case charged Morris Lepinsky with the offense of a misdemeanor "for that the said Morris Lepinsky, in the county of Chatham and State of Georgia aforesaid, on the 4th day of June in the year of our Lord one thousand nine hundred and eight, did offer to buy, and was concerned in the buying of a vote, to wit, the vote of I. Levy, in the primary election held in the city of Savannah, Chatham county, Georgia, on the 4th day of June, 1908, to wit, the primary election of the Democratic party for choosing nominees for said State and county officers, contrary to the laws," etc. The defendant demurred to the accusation, upon the following grounds: "1. Defendant demurs especially upon the ground that the accusation is duplicitous, in that it charges the defendant with the act of offering to buy a vote, and also with the act of being concerned in the buying of a vote; said charges not being laid in separate counts. 2. Said accusation fails to allege that I. Levy was a registered voter entitled to vote at said primary. 3. Said accusation fails to allege that the primary was a general one, or one regularly called by the Democratic party, or held in pursuance of such call. 4. Said accusation

fails to allege that said primary was held for offices elective by the people of the State of Georgia.    5. Said accusation fails to follow the warrant upon which it is based, in that the warrant charges the defendant with offering to buy the vote of one I. Levy, while the accusation charges a further and different offense.    6. Defendant demurs specially to said accusation upon the ground that the language, 'was concerned in the buying of a vote,' is vague and indefinite, and fails to put this defendant on notice of what is intended to be charged thereby."

We think the demurrer was properly overruled.    To charge that the defendant "did offer to buy, and was concerned in the buying of a vote," does not render the accusation duplicitous.    If the disjunctive "or," as it appears in the statute, had been used, the accusation might have been subject to this objection.    Considering the language all together, the charge simply means that the defendant directly or indirectly bought a vote.    Furthermore, it is held in *Gilbert* v. *State,* 65 *Ga.* 449, that while a defendant can not be charged with two separate and distinct offenses, there are some offenses which may be incorporated in the same indictment if they constitute but one transaction, for the purpose of fixing and establishing the main offense.

After all that has been said in the brief of the able counsel for the plaintiff in error, the charge is in the language of the law, and so plain that the jury could not fail to understand that the State offered, at its peril, to prove both that the defendant offered to buy the vote and was concerned in buying the vote of I. Levy.    The act of 1905 is aimed at the single offense of buying votes.    If the State charges the offense as having been done in all of the ways mentioned in the act, it could do so in a single count, for at last it is but the one offense of buying a vote; and if the language employed in the charge was such as that the jury could plainly understand the nature of the charge, it would constitute but one offense, if that count's description of the different methods in which the offense was committed all related to the same specific transaction.    Upon this subject see *Long* v. *State,* 12 *Ga.* 293; *Thomas* v. *State,* 59 *Ga.* 784; *Heath* v. *State,* 91 *Ga.* 126 (16 S. E. 657); *Lampkin* v. *State,* 87 *Ga.* 516 (13 S. E. 523).    Nothing is better settled than that offenses differing from each other may be included in the same indictment, if they are of the same nature and different only in de-

gree. Where there is only one offense charged, which may be committed in more than one way, it is safer to charge it in separate counts, so that if there is a failure of proof that it was committed in one of the ways charged, there may still be evidence sufficient to establish a different count. But if the same criminal act can be committed in more than one way, it is permissible to charge, in the same count, that it was committed in all of the ways.

The second count of the demurrer alleges that the accusation is defective because it fails to allege that Levy was a registered voter and entitled to vote at the primary in question. The statute does not confine the offense to the buying of a registered vote; and, we think, wisely so. The offense against the purity of elections and good morals would be just as flagrant if, by means of money, one should induce another, who was not registered, to fraudulently cast a vote to which he was not entitled, as if the corrupted voter was duly entitled to vote. It is possible that one who has not registered may, by assuming to be a person whose name appears upon the list, fraudulently induce the election managers to allow him to vote; and certainly if he was induced to vote this fraudulent ticket by the use of money, he who induced him to commit this double crime would come as much in the purview of the statute as one who corrupted the franchise of a voter duly registered. The allegation that the election was a primary election of the Democratic party for choosing nominees for State and county officers, and held in the city of Savannah, Chatham county, is sufficient charge of the regularity of the election, and that the officers, if chosen, were elected by the people of the whole State. The language employed certainly negatives the assertion that is sometimes humorously made, that Chatham county is not within the State of Georgia.

We have several times held that the accusation may be broader than the original affidavit and warrant. The affidavit and warrant are merely for the purpose of bringing the party before the court. The accusation must frequently be much more specific, in order to present such a valid charge as will meet the requirements of criminal pleading by putting the defendant on notice of the identical charge he is expected to meet, and enable him to prepare to defend against the charge.

The charge that a named defendant "was concerned in the buying of a vote" would be demurrable as being too vague and in-

definite, but the charge as made, that the defendant was concerned in the buying of the vote of I. Levy at a definite time and place, and in a named election, fully complies with all the requirements of law.

2. The defendant amended the general grounds of his motion for new trial by the addition of five special grounds. Three of these assign error upon the instructions of the judge; and two complain of the admission of testimony. So far as the instructions complained of are concerned, they seem to embody sound principles of law. They are correct in the abstract. If more specific or fuller instructions were desired, they should have been requested. In so far as the complaint is made that they were misleading, this complaint is not established, because the charge, as a whole, is not sent up in the record, and it is to be presumed that the judge gave the jury all necessary instructions pertinent to the issues involved.

There is absolutely no merit in the second ground of the amended motion, in which it is insisted that the court assumed, as a fact, that the primary election was held on the day alleged. The instruction assigned as error for this reason is as follows: "Every material allegation in an accusation must be proved beyond a reasonable doubt, before one accused under it can be found guilty. Therefore, in this case it must be shown to you, by evidence which convinces you beyond a reasonable doubt, that this defendant, on the day named, offered to buy, or was concerned in buying, the vote of Ike Levy; that this alleged transaction was with reference to a vote in the primary election held in the city of Savannah, Chatham county, on the fourth day of June, 1908, and that it was the primary election of the Democratic party for choosing nominees for State and county officers."

Nor is there any merit in the third ground, in which exception is taken to the concluding portion of the court's charge, upon the ground that it excluded from the jury the rule that if they determined that the evidence was entirely circumstantial, they must be satisfied, to the exclusion of every reasonable hypothesis save only that of the guilt of the accused, before they would be authorized to return a verdict of guilty. In the first place, the exception is not fully sustained by the record, because it is stated in the third ground that the court, "after stating the rules of circumstantial and direct evidence incorrectly, limited the jury in the application of these rules to their verdict." Presumably, then, the court had

stated all the rules upon the subject of circumstantial evidence, necessary or proper to be given in the pending trial; but under our view, it was unnecessary for him to have charged upon circumstantial evidence, because the case is one of direct evidence, and in such a case the rules of circumstantial evidence have no necessary application, and to instruct the jury upon the subject is likely to be misleading and confusing.

3. It appears, from the evidence in behalf of the State, that the defendant was seen by one Rossignol, around the court-house on the day of the election. The witness testified that he saw him have money. He also saw Levy. The defendant asked Levy if he would go and vote with him, and said that he would pay him for doing so. The method by which he was to pay Levy was as follows: Rossignol heard Lepinsky tell Levy that he would put $5 in the hands of a man named Buckley, to be paid to Levy if he would vote as Lepinsky wanted him. Rossignol testified that Lepinsky put the money in Buckley's hands and gave Levy a ticket,—a ballot,—and he went up and voted. Levy and Buckley went off together, and Rossignol followed them and saw the money pass, in Cottingham's bar. It does not appear how far it is from the court-house to the bar in question, nor does it matter. According to the testimony, Lepinsky made Buckley his agent to pay the money. If Buckley paid the money, it matters not when or where, after Lepinsky had authorized Buckley to pay it, it was the act of Lepinsky, through his agent; and Lepinsky would be criminally responsible therefor, if the payment was a bribe, although Buckley might also be liable criminally. Consequently, there is no merit in the objection urged to the testimony,—"Levy and Buckley went off together, and I followed them, and they went to Cottingham's bar, and I saw the money pass. I saw Buckley pass the money to Levy in Cottingham's bar,"—upon the ground that the transaction did not take place in the presence of the defendant. As we have stated above, in view of Rossignol's previous testimony, Lepinsky had placed the money in Buckley's hands to be paid to Levy; and the payment was Lepinsky's, whenever Buckley complied with the instructions Lepinsky had given him.

4. Exception is also taken to the admission of testimony that the "election was for the nominees of the Democratic primary. I voted in two elections. The first election was on June 4th, and for

the same officers was an election later. The June election was the first election; that was the primary for the nominees of the Democratic party." The objection urged to this testimony was that the proper proof that the alleged primary was a regularly called and legally conducted primary election, as charged in the accusation, was the record of the call of the Democratic primary, and the order for such primary. We think the fact that a primary election was held on a certain day for the nominees of a certain party, for certain offices, may be proved by parol. The fact that the election was actually held could certainly be proved by parol. It was a substantive fact. If it was not a regular and legal election, or if it was a sham election, this would afford a substantive matter of defense. The act does not require the keeping of any written record of the call for primary elections or the order fixing a primary; and certainly, in a case where an election was regularly and legally held, and the successful candidates duly declared to have been nominated, the inhibition against corrupt bribery should be effective. If there is any law which should be more zealously enforced than another, it is that which protects the purity of the ballot-box; and if there is one point which should be more especially guarded against than any other, it is the corrupt use of money in elections. There is no safety for the State when money, and not men, does the work. Our law justly abhors the degraded bribe taker, and the no less degraded, though more opulent, bribe giver. Hence, it is to be presumed that the legislature, in the passage of the act of 1905, necessarily looked more to substance than to form. One accused of this great wrong to society should receive a fair trial, with every right accorded him which is permitted to a citizen accused of any other crime. The State should be required to properly charge and clearly prove the commission of the offense; but where a jury finds that the evidence establishes the charge as made, neither hair-splitting distinctions nor refined subtleties should be more effectual in setting aside the jury's finding than in those offenses more generally considered of greater import. Homicide generally destroys a single life; bribery at the ballot-box destroys the very foundation of the whole State.

We carefully examined the several grounds of the demurrer, because the defendant demurring was entitled to an indictment perfect in form as well as in substance. After passing the demurrer

we could truly have said that if there had been errors they would have become immaterial, for the evidence demanded a verdict of guilty.                                          *Judgment affirmed.*