384 So.2d 668 (1980)
Theodore TRUSHIN, Appellant,
v.
The STATE of Florida, Appellee.
No. 79-550.
District Court of Appeal of Florida, Third District.
May 20, 1980.
*670 Melvin S. Black, Miami, for appellant.
Jim Smith, Atty. Gen., and James H. Greason, Asst. Atty. Gen., for appellee.
Before BARKDULL, HENDRY and SCHWARTZ, JJ.
SCHWARTZ, Judge.
After a non-jury trial, Theodore M. Trushin was found guilty of a violation of that portion of Section 104.061(2), Florida Statutes (1977) which makes it a felony to "directly or indirectly ... promise anything of value to another intending thereby to buy his or another's vote." The basis of the charge was the fact that Trushin, a lawyer, had distributed a letter to residents of an apartment building who were otherwise unknown to him, in which he offered to write a will without charge for anyone who would "pledge their vote" to two named judicial candidates in a forthcoming election. This appeal presents difficult and important issues concerning both the validity of the statute and the essential elements of the offense it proscribes. Upon the conclusions that the statute is constitutional and that the state's case established its violation by the defendant, we affirm the judgment under review.

I

Facts and Proceedings Below
Trushin was charged in a one-count information which, although captioned as one for "corruptly influencing voting under § 104.061," alleged a violation only of subsection (2) of that statute.[1] The information alleged that:
[O]n or about the 23rd day of September, 1978, in the County and State aforesaid, [Trushin] did unlawfully and feloniously in the County of Dade, State of Florida, give or promise something of value to another or others intending thereby to buy their vote or votes, in two specific races in the November 7, 1978 General Election which was held in Dade County, Florida; or to corruptly influence them in casting their votes, in two specific races in the November 7, 1978, General Election which was held in Dade County, Florida.
In furtherance thereof the said THEODORE M. TRUSHIN on or about September 23, 1978 did prepare and deliver or cause to be prepared and delivered to a resident or residents of the Roney Plaza Apartments the following letter to-wit:
*671
 Theodore M. Trushin Law Offices, P.A.
THEODORE M. TRUSHIN, J.D. SUITE M-101, 2201 COLLINS AVENUE
 (HOLIDAY INN GARDEN PLAZA OFFICES)
MARITAL & FAMILY LAW MIAMI BEACH, FLORIDA 33139
REAL PROPERTY LAW ____
WILLS, ESTATES & ESTATE PLANNING TELEPHONE (305) 532-4801
 September 23, 1978
Dear Neighbor,
Although new to your neighborhood, I have engaged in the practice of law on Miami Beach for more than 20 years. During this time, I have had occasion to handle legal matters with both Judge Frederick N. Barad and Judge Calvin R. Mapp, on numerous occasions. I have dealt with them for many years before they went on the bench, and have appeared in their court many times since they became judges.
I unqualifiedly endorse both Frederick N. Barad for retention on the Circuit Court and Calvin R. Mapp for retention of the County Court  Men who represent the highest standares of the legal profession.
I will be happy to discuss the qualifications and background of these men with you personally.
To every resident of the Roney Plaza Apartments who comes to my office to pledge their vote to Judge Frederick N. Barad and Judge Calvin R. Mapp, in the upcoming runoff election, I will prepare a Last Will and Testament for that person without charge.
My office is located across the street on the mezzanine floor of the Holiday Inn, in Suite M-101.
 Thank you.
 Sincerely,

 THEODORE M. TRUSHIN
 TMT/hc
Two witnesses testified in the state's case at the trial. The first was Edgar Buttle who stated only that he was living in the Roney Plaza Apartments on Miami Beach when a copy of the letter set out in the information  which was introduced into evidence  was slipped under his door.[2] There was no testimony that he or any other person who received the letter was a registered voter or even that he was a permanent resident of Florida, and thus eligible to vote under Section 97.041, Florida Statutes (1978) at the November, 1978 general election. The other witness for the prosecution was an assistant state attorney, who testified to a voluntary statement made by Trushin in which, among other things, he admitted circulating copies of the document to the various residents of the apartment building.
In both the out-of-court statement and his testimony at the trial, Trushin related his version of the circumstances surrounding the initial circulation of the letter. He stated that he had indeed signed the letter[3] *672 and authorized[4] its distribution to the occupants of the Roney Plaza Apartments. The defendant stated that, at the time, he had no idea even of the existence of § 104.061(2) or the possibility that there was anything otherwise wrong with an offer to perform legal services in return only for pledging to vote for a judicial candidate.[5] Probably because the resulting publicity given his letter had by then made him aware of the statute and of the other improprieties involved, Trushin stated without contradiction[6] that none of the 50-odd persons who came to his office in response to the circular (or the publicity) was in fact required to pledge his vote as a condition to the receipt of his free will.[7] On cross-examination however, he confirmed the intention which motivated his transmitting the letter in the first place:
"Q. Your original intent in sending that letter out was to have people vote and support the candidates that you have listed in that letter?
A. Not support the candidates. I guess I would have to say I wanted them to vote for the candidates, actually."
At the conclusion of the trial, after the court had denied a motion for judgment of acquittal, it specifically stated that
"I find no evidence that the Defendant corruptly influenced another to cast his vote. However, I do find that the Defendant directly gave or promised something of value, that is, writing a will to another, intending thereby to receive his vote to support candidates Judge Barad and Judge Mapp."
Trushin was subsequently adjudicated guilty and sentenced to serve 60 days in the county jail. This appeal followed.

II

The Constitutionality of § 104.061(2)
The defendant's first point claims that § 104.061(2) is facially unconstitutional on grounds of vagueness and impermissible overbreadth. Notwithstanding that these issues are acknowledgedly raised for the first time on appeal,[8] we consider their merits because a conviction for the violation of a facially invalid statute would constitute fundamental error.[9]Sanford v. Rubin, 237 So.2d 134 (Fla. 1970); In re Kionka's Estate, 121 So.2d 644, 647 (Fla. 1960) (O'Connell, J., specially concurring); Town of Monticello v. Finlayson, 156 Fla. 568, 23 So.2d 843 (1945); Silver v. State, 174 So.2d 91 (Fla. 1st DCA 1965), cert. denied, 180 So.2d 658 (Fla. 1965); see Kinner v. State, 382 So.2d 756 (Fla. 2d DCA 1980), and cases cited. We hold, however, that the statute is not in fact vulnerable to either of the constitutional attacks made upon it, and that it is therefore indeed valid and enforceable.
*673 1. Statute not Vague. Trushin's first contention is that § 104.061(2) is void for vagueness. It is contended specifically that the use of the expression "anything of value," which is not otherwise defined, renders the statute so unclear "that men of common intelligence must necessarily [question] its meaning and differ as to its application," State v. Buchanan, 191 So.2d 33, 34 (Fla. 1966), thus invalidating the provision on due process grounds. We entirely disagree.[10] Simply stated, we are able to discern no lack of clarity whatever in either this or any other portion of the statute. The term "anything of value"  that which may not be given or promised to another in order to buy or corruptly influence a vote  is so completely clear and self-defining that one is tempted to rely solely on the authority of Gertrude Stein to support the proposition.[11]
Even though the challenged expression has been employed in similar statutes for a century or more, see e.g., Watson v. State, 39 Ohio St. 123 (1883), we are aware of no authority which even seriously considers the possibility of its vagueness; there is certainly none which actually holds it so. In United States v. Chestnut, 394 F. Supp. 581, 588 (S.D.N.Y. 1975), aff'd, 533 F.2d 40 (2d Cir.1976), cert. denied, 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 93 (1976) the court characterized a vagueness challenge to the provisions of 18 U.S.C. § 591 (1970) which defined forbidden political contributions and expenditures to include "anything of value" as "border[ing] on the frivolous." See also Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830, supra. Similarly, even the dissenting opinion of Justice Calogero in State v. Newton, 328 So.2d 110 (La. 1976), upon which, as we shall see, the defendant heavily relies on the overbreadth question, states at 328 So.2d 112, "R.S. 14:119 prohibits, among other things, the indict offering to give anything of apparent or prospective value to any voter with the intent to influence that voter in casting his ballot. This language is not vague; it is clear and unambiguous." The majority opinion in Newton similarly dismisses the vagueness question in a single brief reference at 328 So.2d 118.
Surely no person of ordinary mental capacity needs to guess about the fact that he is precluded from offering or transferring any item which is worth anything  even, as appellant suggests, a pencil or a blotter  so long as he acts with the unlawful intent proscribed by the statute.[12] See Zalla v. State, 61 So.2d 649, 651 (Fla. 1952). Hence, the vagueness claim must fall. E.g., Sandstrom v. Leader, 370 So.2d 3, 5-6 (Fla. 1979); Swinney v. Untreiner, 272 So.2d 805 (Fla. 1973), cert. denied, 413 U.S. 921, 93 S.Ct. 3064, 37 L.Ed.2d 1043 (1973).
2. Statute not Unconstitutionally Overbroad. The appellant's far more substantial challenge to § 104.061(2) is that it is facially overbroad[13] on the grounds that it criminalizes behavior which is protected by the first amendment to the United States Constitution and by Article I, Sections 4 and 9 of the Florida Constitution.[14] His precise *674 claim to this effect is that § 104.061(2) invalidly proscribes such common, ordinary, and presumably protected election activity as the distribution of matchbooks, pencils, or other items of some small but discernable value, the provision of rides to the polls, and even the making of a campaign promise to lower taxes. We reject this contention simply because the statute proscribes only conduct  the purchase and attempted purchase of votes  which the state has a manifest right to regulate and does not in fact forbid any activity or conduct which is protected by the constitution.
In approaching this issue, we are aware both that any legitimate doubts as to the proper construction of § 104.061(2) are to be resolved so as to preserve its constitutionality, White v. State, 330 So.2d 3 (Fla. 1976); and that, since the statute plainly regulates conduct as well as "mere speech," its alleged overbreadth "must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Broadrick v. Oklahoma, 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973); State v. Elder, supra. In this case, however, we find it unnecessary to invoke either of these canons of constitutional decision-making. On its face, and without the necessity of construing any ambiguity or judicially inserting any limiting qualifications,[15] the statute is confined to non-protected, clearly criminal conduct. To repeat, it precludes giving or promising anything of value only when the defendant intends "thereby to buy [a] vote or to corruptly[16] influence" the casting of a vote. Thus the statute, forbidding acts intended to condition another's vote upon the receipt of a personal benefit, is plainly and properly designed only to preserve the sanctity of the ballot.[17] Its terms, which are very similar to those of comparable "voter bribery" statutes in other jurisdictions, see 26 Am.Jur.2d Elections § 377 (1966); 29 C.J.S. Elections § 332 (1965), are strictly limited only to that conduct, and do not even purport to penalize the activity to which the appellant refers.
As to the distribution of items of relatively small value in order to promote a particular candidacy, this point is made clear by several executive opinions on the precise subject. In the most recent, 1978 Op.Div. of Elec. DE 78-36 (August 17, 1978) the Division of Elections considered the propriety of the distribution of miniature "blimps" bearing a candidate's name, as a means of campaign advertising and promotion. Summarizing previous attorney-general's opinions on the issue, it was said:
The situation you describe seems no different from a candidate giving bumper stickers, posters, or other campaign material to a contributor. You have merely chosen to distribute an item somewhat unique to Florida political campaigns. But uniqueness does not eliminate it as a permissible campaign device.
It should be cautioned however that such blimps, or any item of value, may not be given by a candidate in exchange for one's vote. s. 104.061(2), F.S. This statute reads as follows:
"(2) No person shall directly or indirectly give or promise anything of value to another intending thereby to buy his or another's vote or to corruptly influence him or another in casting his vote... ."
The Attorney General has previously opined that this statute does not prevent the free distribution of items of nominal value by a candidate. Op.Att'y Gen.Fla. 066-35 (April 8, 1966). That opinion made the following determination in its *675 analysis of certain amendments to the election law by the 1965 legislature:[18]
"It would appear ... that it was the intent of the legislature to liberalize the law to the extent it would permit a candidate to give away nominal items in furtherance of his candidacy so long as the give aways were not in exchange for a vote. It is doubtful that an elector's vote could be bought with any of the ... nominal cost items frequently used by candidates in political campaigns. The primary purpose of using such items is to give the elector some slight tangible object on which the candidate's name can be imprinted with the thought in mind that the elector will not discard it as quickly as he would an ordinary campaign button or piece of campaign literature." Id. (e.s.)[19]
This 1966 opinion was reaffirmed by the Attorney General in a June 12, 1975 informal opinion to John Lloyd, then General Counsel of Broward County, which considered the current language of s. 104.061(2), F.S. The giving of blimps to their contributors would seem to be the type of activity contemplated by these opinions.
Accordingly, it is the opinion of this office that blimps being utilized as campaign advertising items may be given to contributors upon receipt of a contribution.
Summary
The distribution of items of nominal value to contributors by a candidate is not prohibited by the election laws, provided such items are not given for the purpose of buying or corruptly influencing the recipient's vote. [e.s.]
We entirely agree with this view,[20] and would only add that if one in fact gave or offered a pencil, a matchbook or a "blimp"[21]with the intention of buying a vote  if, for example, it were offered, as in this case, only upon the specific condition and in return for the offeree's pledge to vote for a particular candidate  such an act would indeed be a criminal one and could be validly forbidden. There is surely no constitutional reason for distinguishing among bribers based upon the value of the bribe.
*676 Nor is there any possibility that a candidate may be punished for making a promise as to the official actions he would take if elected. Campaign rhetoric of this kind is simply not uttered with the criminal intent explicitly required by the statute. See Adair v. McElreath, 167 Ga. 294, 145 S.E. 841 (1928); see also Douglass v. County of Baker, 23 Fla. 419, 2 So. 776 (1887).
The conclusions we have reached on the overbreadth questions are directly supported by State v. Newton, supra, which considered the facial validity of a Louisiana statute, La.R.S. 14:119 which, in pertinent part provides:
Bribery of voters is the giving or offering to give, directly or indirectly, any money, or anything of apparent present or prospective value to any voter at any general, primary, or special election, or at any convention of a recognized political party, with the intent to influence the voter in the casting of his ballot. [e.s.]
While the Louisiana supreme court initially held the statute impermissibly overbroad, it reached a contrary conclusion on rehearing. The majority based its position solely on the fact that the conduct regulated by the provision was defined as "bribery" and that the commonly understood elements of "bribery", specifically the corrupt intent to buy or influence another's judgment or conduct, could therefore be read into the statute. As so interpreted, the statute was declared valid because, Chief Justice Sanders said at 328 So.2d 118:
it is clear that a platform promise of better government, lower taxes, or welfare reform made generally to a group of voters or to individual voters is not bribery within the meaning of the statute. Similarly, handbills, buttons, pencils, and dinners are commonly accepted means of publicizing a candidate's name and qualifications, but neither do they violate the statute. Most, if not all, of these items confer no pecuniary benefit, are offered to voters generally, and most important, are offered with the intent to publicize a candidate and his views, not to buy a vote. The restriction achieved by the requirement of a corrupt intent to influence the recipient's vote effectively prevents the statute from infringing upon a candidate's freedom of expression. [e.s.]
Trushin contends that we should follow the original decision of the court, the opinion of Justice Calogero at 328 So.2d 111 which became the dissent, because, unlike the Louisiana statute, § 104.061(2) does not refer in so many words to "bribery." We think this fact has exactly the opposite effect. The majority decision in Newton was able to preserve the statute only by deducing from its references to bribery that it should be "construed" to include the requirements of an intent to buy or corruptly influence a vote  even though it explicitly referred only to a simple "intent to influence the voter in the casting of [the] ballot." Our statute requires no such "construction" by inference and insertion since the legislature itself specifically provided the validating language.[22] If the Louisiana statute has been rendered valid by the limiting judicial construction of the Louisiana Supreme Court, see Broadrick v. Oklahoma, supra, § 104.061(2), which itself tracks that narrowing language, is all the more obviously so.

III

The Sufficiency of the Evidence: the Elements of the Offense
Trushin alternatively contends that the evidence was insufficient to establish each of the essential elements of the offense prohibited by § 104.061(2). Again, we disagree.
§ 104.061(2) states simply that "[n]o person shall directly or indirectly give or promise anything of value to another intending thereby to buy his or another's vote or to corruptly influence him or another in casting his vote." The essential elements of the crime are therefore [1] the giving or promising *677 to another person [2] of something of value [3] with the intention to buy or corruptly influence a vote. On the face of the matter, it seems clear that the evidence below amply supported each of these elements: Trushin's letter [1] made a promise to Buttle and the several others to whom it was sent [2] of something of value, the services involved in the preparation of a will; [3] "intending thereby to buy [a] vote" as demonstrated by the letter's explicit statement that the free will would be forthcoming only in return for the recipient's agreement to vote for Judges Barad and Mapp, and Trushin's own admission on the stand that his specific intention in circulating the promise was to induce people to vote for those candidates. We find no merit in any of Trushin's specific legal contentions to the contrary of this analysis of the statute and the evidence.
1. No requirement that Promisee be Registered Voter. The defendant's primary contentions are based on the state's acknowledged failure to establish that Buttle or anyone else to whom the letter was sent was actually registered or eligible to vote in the November 1978 election. In support of this claim, he argues by analogy to the elements of the former version of the public-official bribery statute, Section 838.011, Florida Statutes (1969),[23] as interpreted in such cases as Nell v. State, 277 So.2d 1 (Fla. 1973). Since one of the elements of that offense was "knowledge on the part of the accused of the official capacity of the person to whom the bribe [was] offered," 277 So.2d at 5, Trushin contends that proof that the person to whom an unlawful promise is made is a registered or eligible voter  that is that he could lawfully vote  is an essential element of the crime proscribed by § 104.061(2). We reject this claim because the line of reasoning upon which it is based is unsupportable.[24]
Section 838.011 applied, by its express terms, only to persons who made corrupt payments or offers "to any public officer" [e.s.]. Thus, the element that the offeree be such a public officer was required by the statute itself.[25] In direct contrast, § 104.061(2) requires only that the corrupt transfer or promise be made to "another." Cf. State v. Canova, 278 Md. 483, 365 A.2d 988 (1976). Even more pointedly, "another" is used instead of the term "elector"  a legally registered voter  which is specifically employed in § 104.061(1) (forbidding improper influence upon "any elector") and was contained in the now-repealed Section 99.172, Florida Statutes (1977) (forbidden to give or promise anything of value "to any elector"). We must conclude that by using "another," rather than "elector" or "registered voter"  either of which would have been the equivalent of "public officer" in § 833.011  the legislature specifically meant not to include that element in § 104.061(2). See Florida State Racing Commission v. Bourquardez, 42 So.2d 87 (Fla. 1949).
A possible  and very plausible  reason for the legislative decision to this effect may be found in Lepinsky v. State, 7 Ga. App. 285, 66 S.E. 965 (1910). Lepinsky, apparently the only decided case on the subject, squarely holds that the elements of the crime of "buying a vote" do not include a showing that the vote to be purchased is a lawful one. At 66 S.E. 967, the court said:

*678 The second count of the demurrer alleges that the accusation is defective because it fails to allege that Levy was a registered voter and entitled to vote at the primary in question. The statute does not confine the offense to the buying of a registered vote, and we think wisely so. The offense against the purity of elections and good morals would be just as flagrant if, by means of money, one should induce another who was not registered to fraudulently cast a vote to which he was not entitled, as if the corrupted voter was duly entitled to vote. It is possible that one who has not registered may, by assuming to be a person whose name appears upon the list, fraudulently induce the election managers to allow him to vote, and certainly, if he was induced to vote this fraudulent ticket by the use of money, he who induced him to commit this double crime would come as much in the purview of the statute as one who corrupted the franchise of a voter duly registered. [e.s.]
See also State v. McCrocklin, 186 Ind. 277, 115 N.E. 929 (1917) (immaterial whether bribee actually voted in election).
We find support for our conclusion that the legality of the vote sought to be purchased is not an element of § 104.061 in State v. Brown, 298 So.2d 487 (Fla. 4th DCA 1974). In considering another provision of Chapter 104, Section 104.041, Florida Statutes (1971), which forbids fraudulent conduct "in connection with any vote," the court held at 298 So.2d 490-91:
Appellee contends that since the absentee ballot viewed by the grand jury was invalid there can be no violation of law, as a void ballot does not constitute a vote within the meaning of § 104.041, F.S. We reject that suggestion, because § 104.041 includes within its proscriptions attempts to perpetrate the prohibited conduct. Thus whether or not the ballot was valid, one can be guilty of an attempt to perpetrate a fraud prohibited by the statute. [e.s.]
The direct pertinence of that case to this one lies in the fact that Trushin's promise or offer of a free will was in effect likewise an "attempt" to buy a vote, which, as in the case of "attempted" bribery of a public official is subsumed in and comprehended by the completed crime. See Coleman v. State ex rel. Mitchell, 132 Fla. 845, 182 So. 627 (1938); State v. Napoli, supra; Craig v. State, 244 So.2d 151 (Fla. 3d DCA 1971); cf. also, e.g., State v. Tomas, 370 So.2d 1142 (Fla. 1979); McIntyre v. State, 380 So.2d 1064 (Fla.2d DCA 1980). As to such conduct, the mere making of the forbidden offer or promise constitutes a violation of the statute; the offer need not be accepted or even responded to. As the supreme court said in Zalla v. State, 61 So.2d 649, 651 (Fla. 1952):
The gist of the offense of "attempted bribery" is the criminal intent to undermine the proper and orderly administration of justice. The law punishes an offer which is calculated to debase. The corpus delicti is the corrupt intent. 8 Am.Jr. page 891, Sec. 10; Ford v. Commonwealth, 1941, 177 Va. 889, 15 S.E.2d 50; Commonwealth v. Baker, 1941, 146 Pa.Super. 559, 22 A.2d 602; Anno. 52 A.L.R. page 821.
Trushin, by offering a will only to those who had agreed to vote for his candidates, obviously, and as he said, intended to "buy" those votes. It follows that the transmission to others of the promise itself completed the crime, although the capacity and even the identity of those "others" were previously unknown to the defendant.[26] See State v. Schleifer, 99 Conn. 432, 121 A. 805 (1923) (solicitation of a felony to a crowd); Reg. v. Most, 14 Cox, C.C. 583, 44 L.T.N.S. 823, 7 Q.B.Div. 244 (1881) (solicitation of a crime by newspaper advertisement). Since this is true, it cannot matter whether the persons to whom the letter was sent and from whom Trushin intended to purchase the votes were legally capable of *679 selling them. See Brown v. State, supra, Lepinsky v. State, supra.[27]
2. Preparation of Will "Anything of Value." Trushin's claim that the promised preparation of a will was not shown to be "anything of value" merits little response. First, it is obvious that the legal services involved are objectively worth at least something. See Zalla v. State, supra. Second, Trushin is subjectively unable to claim to the contrary  that is, to suggest, as he does, that he considered his efforts routine and valueless or that there was no showing that they were regarded otherwise by Buttle or anyone who received the letter. This is so because Trushin himself promised the will in order to induce the sale of the vote. As Zalla says at 61 So.2d 651:
The offer by appellant "to guarantee that the said number would come out and be the winning numbers" was an expression of an ability to produce a bribe. If made as charged in the information, appellant must have considered it of sufficient value at the time to influence the police officers. He is in no position to insist now that his "guarantee" was worthless. Commonwealth v. Hurley, 1942, 311 Mass. 78, 40 N.E.2d 258.
3. Promise made with forbidden intent to buy a vote. Finally, we regard as unsubstantial the claim that Trushin did not possess the criminal intent required by the statute. The statutorily forbidden intent to "buy a vote"  that is, to condition a vote upon the receipt of the valuable benefit which Trushin promised rather than upon considered individual judgment alone, see State v. Newton, supra; State v. Elting, 29 Kan. 397 (1883)  was clearly established. The facts that Trushin may have acted only out of a misguided sense of public service and received no pecuniary benefit himself are irrelevant. Diehl v. Totten, 32 N.D. 131, 155 N.W. 74 (1915); Carrothers v. Russell, 53 Iowa 346, 5 N.W. 499 (1880). The statute criminalizes attempts, from whatever source, and for whatever reason, to exchange a vote for a consideration. It is obvious that this is just what Trushin promised and "intended" to do.

IV

Conclusion
Some might consider that the facts of this case demonstrate that Trushin may have acted stupidly and unethically in circulating his offer to bribe by handbill, but do not merit his conviction of a felony. We do not agree with such a characterization of the defendant's conduct. The "bottom line" is that he offered to purchase votes in return for services rendered. One need not be a lawyer or aware of § 104.061(2) to know that it is wrong to try to pervert the electoral process in this way. The legislature rightly forbids this conduct; and Trushin was rightly convicted of violating its command.
Affirmed.[28]
NOTES
[1] Section 104.061, Florida Statutes (1977) provides, in its entirety:

104.061 Corruptly influencing voting.
(1) Whoever by bribery, menace, threat, or other corruption whatsoever, either directly or indirectly, attempts to influence, deceive, or deter any elector in voting or interferes with him in the free exercise of his right to vote at any election is guilty of a misdemeanor or of the first degree, punishable as provided in s. 775.082 or s. 775.083 for the first conviction, and a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084, for any subsequent conviction.
(2) No person shall directly or indirectly give or promise anything of value to another intending thereby to buy his or another's vote or to corruptly influence him or another in casting his vote. Any person who violates this subsection is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. However, this subsection shall not apply to the serving of food to be consumed at a political rally or meeting.
[2] Buttle made no response to the letter other than to bring it to the attention of the opponent of one of the judges mentioned.
[3] He and his secretary both testified that she had erroneously mistranscribed his dictation from the requirement that a resident come to his office to "pledge their support" for the candidates in question, to "pledge their vote," as the letter actually read. Even assuming that this would make some legal difference, it is obvious, particularly since Trushin admittedly signed the letter in its final form, that the trial judge was free to disbelieve this testimony.
[4] It was admitted by Trushin, and conclusively otherwise established, that he conceived and executed the idea entirely on his own and totally without the knowledge or approval of either judicial candidate to whom he attempted to lend his unsolicited and unwelcome support.
[5] In response to the rather self-evident suggestion that the letter might have been really intended as a means of soliciting legal business for his new office location, Trushin blandly told the state attorney that he felt there was no ethical impropriety in view of the "new supreme court rulings where they allow advertising [and] so forth."
[6] None of the persons who responded to the letter testified at the trial.
[7] Because, as elaborated below, the crime was complete as soon as the letter-promise was circulated, we regard this fact as irrelevant.
[8] The first mention of a constitutional challenge to the statute came in the motion for new trial, which the defendant admits was far too late and which the trial court therefore properly refused to consider. See Fla.R.Crim.P. 3.600.
[9] As discussed below, we have also determined that the case may not be disposed of on other grounds, without reaching and deciding the issue of the statute's validity. Compare Singletary v. State, 322 So.2d 551 (Fla. 1975); State v. Bruno, 104 So.2d 588 (Fla. 1958). The constitutional question is discussed first only for ease of analysis.
[10] Our conclusion to this effect makes it unnecessary to resolve the very difficult question of whether one who, like Trushin, may not validly contend that the statute is unclear as applied to his own actions (plainly, a free will is something of value) has standing to claim that a statute which regulates first amendment-protected activity is void for vagueness, as he clearly does in the case of an attack for overbreadth. Compare Coates v. Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971) with Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).
[11] "Rose is a rose is a rose is a rose."

Sacred Emily [1913]
[12] As we point out infra, it is the requirement of an unlawful intent which saves the statute from the claim of unconstitutional overbreadth. The extent of the value of the item offered or given for the forbidden purposes obviously makes no difference.
[13] As noted supra, at n. 10, there is no doubt of the defendant's standing to raise this issue. State v. Keaton, 371 So.2d 86 (Fla. 1979); State v. Elder, 382 So.2d 687, n. 2 (Fla. 1980).
[14] See Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); NAACP v. Alabama, 377 U.S. 288, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1964); Hobbs v. Thompson, 448 F.2d 456 (5th Cir.1971); Phillips v. City of Flint, 57 Mich. App. 394, 225 N.W.2d 780 (1975).
[15] E.g., White v. State, supra; State v. Newton, supra.
[16] As to the clear meaning of this expression as implying criminality, see Leader v. Sandstrom, supra.
[17] Of course, there neither is nor could be a contention either that the state may not legitimately forbid the purchase or the attempted purchase of a vote, or that words which may be employed in such an undertaking are immunized by the first amendment. See Tipton v. Sands, 103 Mont. 1, 60 P.2d 662 (1936); People v. Hochberg, 62 App.Div.2d 239, 404 N.Y.S.2d 161, 168 (1978).
[18] Prior to 1965, the pertinent statutes, Sections 99.172(3) and 104.061 Florida Statutes (1963), prohibited giving or promising anything of value "in the furtherance" of a candidacy. See 1950 Op. Att'y Gen.Fla. 050-83 (February 17, 1950); 1951 Op. Att'y Gen. Fla. 051-421 (November 23, 1951); 1951 Op.Att'y Gen.Fla. 051-471 (December 19, 1951). There is an obvious and compelling distinction between this language (of highly dubious constitutionality) and the specific requirement in the present version of § 104.061(2), of an intent to corruptly influence or to "buy a vote"  that is, to exchange a vote as the quid pro quo or the consideration for furnishing something of value in return.
[19] This opinion concluded:

[I] would be inclined toward the position that under the provisions of §§ 99.172 and 104.061, F.S., as amended, it was the intent of the legislature to allow candidates to give away such items as matchbooks, pencils, blotters, balloons, combs and other nominal cost items in promoting their candidacy so long as such give aways are not in exchange for a vote. [e.s.]
[20] In arguing to the contrary, the appellant points to the proviso which states that § 104.061(2) "shall not apply to the serving of food to be consumed at a political rally or meeting." It is suggested that this specific exemption (which was transferred from Section 99.172, Florida Statutes (1975), when that statute was repealed by Ch. 77-175, § 66) implies that all other innocuous items of symbolic speech remain included within the reach of the statute. We think otherwise. It seems to us that the exclusion is properly regarded as just that: a provision that the statute does not apply to one who provides a campaign meal, even if he does so with the otherwise forbidden criminal intent to buy or corruptly influence a vote. Of course, Trushin cannot (and does not) complain that the legislature has seen fit not to punish particular conduct it had the right to condemn. See Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); Vining v. Avis Rent-A-Car Systems, Inc., 378 So.2d 280 (Fla. 1979); Brock v. Hardie, 114 Fla. 670, 154 So. 690 (1934); cf. Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962) (grounds supporting constitutional challenge not shown).
[21] Though not a meal at a campaign rally. Ibid.
[22] It is not for us to say whether we agree with Justice Calogero that the majority view represented an impermissible rewriting of the statute contrary to the legislative intent. See State v. Keaton, supra; Brown v. State, 358 So.2d 16 (Fla. 1978).
[23] The significantly amended version of this statute is now Section 838.015, Florida Statutes (1979). As to the reasons for the amendment, see State v. Napoli, 373 So.2d 933, 935 (Fla. 4th DCA 1979).
[24] Our holding that the capacity of the promisee as a registered voter is not an element of the crime results in the rejection of Trushin's claim that his "confession" was improperly admitted because the corpus delicti of the offense had not been previously established by Buttle's testimony.
[25] Nell also held that the "matter sought to be influenced must be within the scope of an officer's legal duties." 277 So.2d at 4. Whatever the merits of this conclusion, see State v. Napoli, supra, n. 23, it was also based upon language in Section 838.011, Florida Statutes (1973) which has no equivalent in § 104.061(2). See the portions of § 838.011 emphasized by the court at 277 So.2d 4.
[26] In this connection, it is not irrelevant that the statute penalizes only the buyer or attempted buyer of a vote; it does not seem to be a Florida statutory crime to sell one.
[27] The problem presented by this case is related to the question of whether one may be guilty or an "attempt" to commit a crime which is legally or factually impossible to complete. See United States v. Oviedo, 525 F.2d 881 (5th Cir.1976). (The issue was directly involved though not specifically addressed in State v. Brown.) It is unnecessary to enter that jurisprudential thicket here, however, because, as we have held, the statutory provision which Trushin violated makes the ability to secure a valid vote irrelevant when there is an intent to purchase one. See Osborn v. United States, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966) (crime to "`endeavor' to interfere with a juror" who in fact never served as such and was never bribed or even approached); Padgett v. State, 378 So.2d 118 (Fla. 1st DCA 1980) (crime to "endeavor" to traffic in stolen property which is not in fact stolen).
[28] We have determined to certify this case to the supreme court as one involving issues of great public importance concerning the validity and interpretation of § 104.061(2).