425 So.2d 1126 (1982)
Theodore TRUSHIN, Petitioner,
v.
STATE of Florida, Respondent.
No. 59378.
Supreme Court of Florida.
November 4, 1982.
Rehearing Denied February 8, 1983.
*1127 Louis M. Jepeway, Jr., of Jepeway & Jepeway and Smith, Black & Peckins, Miami, for petitioner.
Jim Smith, Atty. Gen., and Anthony C. Musto, Asst. Atty. Gen., Miami, for respondent.
McDONALD, Judge.
Trushin petitions for review of a district court decision, reported at 384 So.2d 668 (Fla. 3d DCA 1980), which affirmed his conviction of vote buying and construed and passed on the constitutionality of subsection 104.061(2), Florida Statutes (1977).[1] We have jurisdiction[2] and approve the instant decision.
In September 1978 Trushin circulated a letter throughout an apartment complex in Miami Beach in which he promised:
To every resident of the Roney Plaza Apartments who comes to my office to pledge their vote to Judge Frederick N. Barad and Judge Calvin R. Mapp, in the upcoming runoff election, I will prepare a Last Will and Testament for that person without charge.[3]
He was charged by information with both promising something of value with the intent *1128 to buy votes and corruptly influencing voting under subsection 104.061(2).

Trial
The state's first witness in the nonjury trial was a resident of the apartment complex who identified the letter and testified that he received a copy under his door. Next the state introduced into evidence a statement made by Trushin to an assistant state attorney in which he admitted sending the letter.[4] Defense counsel objected to the admission of that statement on the ground that the corpus delicti had not been independently established because the letter had not yet been connected to Trushin.[5] At the close of the state's case Trushin moved for a judgment of acquittal grounded on the fact that the state's evidence failed to connect Trushin sufficiently with the letter, thus failing to prove Trushin's responsibility for the letter. At the close of all the evidence Trushin again moved for judgment of acquittal, charging only "that there has been no evidence to prove defendant's guilt beyond a reasonable doubt." The court denied both motions. Then, before the court announced its verdict, the following dialogue occurred:
MR. COHEN [defense counsel]: May it please the Court, I now ask that the state elects to which portion of [104.061(2)] they are referring to.
THE COURT: Mr. Glick?
MR. GLICK [prosecutor]: I suggest respectfully that we do not have to elect either one of those portions. The Court can receive evidence as to all portions and eject the portion which does not go to any portion of paragraph 2 of the statute.
THE COURT: The Court will elect for you.
I find no evidence that the defendant corruptly influenced another to cast his vote. However, I do find that the defendant directly gave or promised something of value, that is, writing a will to another, intending thereby to receive his vote to support candidates Judge Barad and Judge Mapp.
The court then adjudicated Trushin guilty of vote buying. Trushin moved for a new trial at which time he first challenged the constitutionality of subsection 104.061(2). He alleged no specific grounds as the basis for this challenge, and the trial court denied the motion.[6]

District Court Appeal
On appeal to the Third District Court of Appeal Trushin charged that: 1) the term "anything of value" in subsection 104.061(2) is unconstitutionally vague; 2) subsection 104.061(2) is unconstitutionally overbroad; 3) the evidence was insufficient to convict because the state failed to prove that the promisee was a registered voter, that the will was "anything of value," and that Trushin had the requisite criminal intent;[7] and 4) Trushin's statement was improperly introduced at trial without independent proof of the corpus delicti because the state failed to prove the promisee was a registered voter.[8]
At trial Trushin raised none of the four points brought up on appeal. Nonetheless, the district court, in a comprehensive and well-reasoned opinion, decided the first three issues, holding that the subsection is not unconstitutionally vague or overbroad, that proof of a registered voter-promisee and knowledge of the law are not elements of the crime, and that the will in this case is something of "value" for purposes of subsection *1129 104.061(2).[9] The district court certified the case to this Court as "involving issues of great public importance concerning the validity and interpretation of § 104.061(2)." 384 So.2d at 679 n. 28.

Supreme Court Review
On application to this Court for discretionary review Trushin asserts six points:
1) Specifically exempting "food to be consumed at a political rally or meeting," even if provided with the intent to buy votes, from the provisions of the statute, makes the statute irrational, thereby violating the equal protection provisions of the state and federal constitutions;
2) The terms "anything of value," "corruptly," and "influence" are unconstitutionally vague;
3) Section 104.061(2) is unconstitutionally overbroad;
4) The trial court should have granted a judgment of acquittal because the state failed to prove Trushin's knowledge that any promisee was a registered voter, or that he offered "anything of value";
5) Trushin's statement to the assistant state attorney was improperly allowed into evidence because the state failed to prove the corpus delicti by failing to show the letter was sent to a registered voter and by failing to competently introduce the contents of the letter, itself; and
6) Trushin has a right to closing argument which was denied.
In summary, none of the four issues raised in the district court was raised in the trial court. Likewise, this Court is asked to decide six issues, none of which was raised at trial and two of which, the first and the sixth, were not raised in the district court.[10]
The obvious threshold question we must answer is which questions presented we should answer. There is and has been confusion on whether an appellate court should consider the constitutionality of a criminal statute absent a constitutional attack at the trial level. This Court itself has considered the constitutionality of statutes, under the doctrine of fundamental error, in civil cases even though that issue had not been raised at the trial court level. See Sanford v. Rubin, 237 So.2d 134 (Fla. 1970); Town of Monticello v. Finlayson, 156 Fla. 568, 23 So.2d 843 (1945).
On the other hand, in Davis v. State, 383 So.2d 620 (Fla. 1980), and in Silver v. State, 188 So.2d 300 (Fla. 1966), we ruled that the constitutionality of a criminal statute cannot be raised for the first time on appeal. In Whitted v. State, 362 So.2d 668 (Fla. 1978), we disallowed the assertion of one of the alleged grounds of unconstitutionality even though the constitutionality of the statute had been attacked at trial because the appellant had failed to raise that particular ground at trial. Perhaps the previous jurisdiction of this Court, which allowed a direct appeal when the constitutionality of a statute was at stake, influenced the categorical positiveness of our declarations in those cases, but these cases more properly illustrate the fact that questions of constitutional infirmity may be waived. See Clark v. State, 363 So.2d 331 (Fla. 1978).
The district court answered the facial constitutionality of the statute question with the following correct assertion: "Notwithstanding that these issues are acknowledgedly raised for the first time on appeal, we consider their merits because a conviction for the violation of a facially invalid statute would constitute fundamental error." 384 So.2d at 672 (footnotes omitted). The facial validity of a statute, including an assertion that the statute is infirm because of overbreadth, can be raised for the first time on appeal even though prudence dictates that it be presented at the trial court level to assure that it will not be considered waived. The constitutional application of a statute to a particular *1130 set of facts is another matter and must be raised at the trial level. Once an appellate court has jurisdiction it may, if it finds it necessary to do so, consider any item that may affect the case. See Whitted; Miami Gardens, Inc. v. Conway, 102 So.2d 622 (Fla. 1958); Vance v. Bliss Properties, Inc., 109 Fla. 388, 149 So. 370 (1933).
Only the constitutionality of the statute under which Trushin was convicted was the kind of alleged error which must be considered for the first time on appeal because the arguments surrounding the statute's validity raised a fundamental error. Whitted; Silver. Accordingly, since Trushin failed to raise issue 6 before either the trial court or the district court, we decline to address that claim when presented for the first time to this Court. Further, issue 5, concerning failure to prove the corpus delicti, was rejected by the district court and was not included within the issues certified in the district court's opinion. While we have the authority to entertain issues ancillary to those in a certified case, Bell v. State, 394 So.2d 979 (Fla. 1981), we recognize the function of district courts as courts of final jurisdiction and will refrain from using that authority unless those issues affect the outcome of the petition after review of the certified case.
Questions two through four present a different problem because the district court ruled on those issues and certified them to this Court. While we may disagree on whether these issues should have been considered as having been waived, the district court had the authority to consider them and found them important enough to certify to this Court. Therefore, we will exercise our jurisdiction and discuss the certified issues. We repeat that the decision of the district court is well reasoned and thorough and requires little elaboration.
Trushin alleges that the terms "anything of value," "corruptly," and "influence" found in subsection 104.061(2) are unconstitutionally vague. Since only the term "anything of value" was raised before the district court, we will limit our consideration to that term. Simmons v. State, 305 So.2d 178 (Fla. 1974).
A statute will withstand constitutional scrutiny under a void-for-vagueness challenge if it is specific enough to give persons of common intelligence and understanding adequate warning of the proscribed conduct. Sanicola v. State, 384 So.2d 152 (Fla. 1980). Trushin maintains that the term "anything of value" is vague because there is no delineation of that term and therefore its application is purely subjective. The state disagrees, arguing that the challenged words are clear on their face.
In considering this issue we agree with the district court that "no person of ordinary mental capacity needs to guess about the fact that he is precluded from offering or transferring any item which is worth anything  even, as appellant suggests, a pencil or a blotter  so long as he acts with the unlawful intent proscribed by the statute." 384 So.2d at 673 (footnote omitted). It is the act of giving or promising to give that is precluded by the statute. It is well within the prerogative of the legislature to proscribe such an act, and by using the term "anything of value" the emphasis of the statute is on the act rather than on the consideration given in return for the act. Therefore, the term "anything of value" does not render subsection 104.061(2) void for vagueness.
Trushin's third issue alleges that subsection 104.061(2) is unconstitutionally overbroad because it criminalizes behavior which is protected by the first amendment to the United States Constitution and by article I, sections 4 and 9 of the Florida Constitution. The district court rejected this contention, finding that the subsection proscribes only conduct, "the purchase and attempted purchase of votes," which the state has a manifest right to regulate. It further found that the subsection does not, in fact, forbid any activity or conduct which is protected by either the state or federal constitution.
When, as here, a state regulates conduct as well as speech, the applicable *1131 test for overbreadth is stated in Broadrick v. Oklahoma, 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973): "where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." As for the statute's plainly legitimate sweep, the United States Supreme Court recently recognized that a state may prohibit the giving of money or other things of value to a voter in exchange for his support and may also declare unlawful an agreement embodying the intention to make such an exchange. Brown v. Hartlage, 456 U.S. 45, 102 S.Ct. 1523, 71 L.Ed.2d 732 (1982). In Brown the Supreme Court interpreted a Kentucky statute dealing with illegal activities of candidates for political office. While the court found the Kentucky statute unconstitutionally restrictive on the candidates' first amendment right of free speech, Brown has limited application to the instant case.[11]
Subsection 104.061(2) is not as restrictive on first amendment rights as the Kentucky statute in Brown and has as its purpose the prevention of corrupt elections. As the district court stated:
On its face, and without the necessity of construing any ambiguity or judicially inserting any limiting qualifications, the statute is confined to non-protected, clearly criminal conduct. To repeat, it precludes giving or promising anything of value only when the defendant intends "thereby to buy [a] vote or to corruptly influence" the casting of a vote. Thus the statute, forbidding acts intended to condition another's vote upon the receipt of a personal benefit, is plainly and properly designed only to preserve the sanctity of the ballot.
384 So.2d at 674 (footnotes omitted, emphasis in original).
In this Court Trushin pursues his constitutional attack on section 104.061 by claiming that the statute is contrary to the equal protection clause of the constitution. His predicate for this argument is the exclusion in the statute for serving food at a political rally or meeting. This provision is alluded to in footnote 20 of the district court opinion, but the equal protection argument was not squarely presented to the district court. While we tend to believe that this argument has been waived by not presenting it earlier, to assure there is no misconception of our finding the statute to be completely constitutional, we have also considered this attack and likewise reject it. Many statutes have exclusions and exceptions of acts from the criminality of statutes. This is not unequal treatment of persons or a class of people because the exemptions are not directed to favor one group over another. There is an historical basis for the exception of serving food at political rallies  since the early formation of this republic people have gathered together on the grounds, eating fried mullet, chicken pilau, or the like, while candidates extol their virtues and try to persuade the voters to elect them. The legislature can properly exclude such activities from the operation of the "buying of votes" statute.
Trushin's final issue questions the sufficiency of the evidence and in particular alleges that the state must prove that the promisee is a registered voter and that drawing a will is "something of value." The district court has properly analyzed these issues. As for the allegation that the promisee must be a registered voter, subsection 104.061(2) speaks only of influencing or buying "another's" vote. It does not require that the other person be a registered voter. Support for this is found in subsection 104.061(1), where the term "elector" is used. Had the legislature intended subsection 104.061(2) to apply to only electors (registered voters) it could have carried that term from subsection (1) to subsection (2). The clear intent of not doing so is to proscribe the act of attempting to make the forbidden offer or promise regardless of *1132 whether it is accepted or responded to. We find no merit to Trushin's allegation that his promise to prepare a will was not shown to be "anything of value." The question of whether the consideration for the promise is "anything of value" is a question for the trier of fact and unless clearly erroneous will not be reversed on appeal.
The decision of the district court is approved.
It is so ordered.
ALDERMAN, C.J., and ADKINS and OVERTON, JJ., concur.
BOYD, J., dissents.

APPENDIX

 Theodore M. Trushin Law Offices, P.A.
THEODORE M. TRUSHIN, J.D. SUITE M-101, 2201 COLLINS AVENUE
MARITAL & FAMILY LAW (HOLIDAY INN GARDEN PLAZA OFFICES)
REAL PROPERTY LAW MIAMI BEACH, FLORIDA 33139.
WILLS, ESTATES & ESTATE PLANNING ________
 September 23, 1978
 TELEPHONE (305) 532-4801
 Dear Neighbor,
 Although new to your neighborhood, I have engaged in the practice of
 law on Miami Beach for more than 20 years. During this time, I have had
 occasion to handle legal matters with both Judge Frederick N. Barad and
 Judge Calvin R. Mapp, on numerous occasions. I have dealt with them for
 many years before they went on the bench, and have appeared in their
 court many times since they became judges.
 I unqualifiedly endorse both Frederick N. Barad for retention on the
 Circuit Court and Calvin R. Mapp for retention of the County Court 
 Men who represent the highest standares of the legal profession.
 I will be happy to discuss the qualifications and background of these
 men with you personally.
 To every resident of the Roney Plaza Apartments who comes to my office
 to pledge their vote to Judge Frederick N. Barad and Judge Calvin R.
 Mapp, in the upcoming runoff election, I will prepare a Last Will and
 Testament for that person without charge.
 My office is located across the street on the mezzanine floor of the
 Holiday Inn, in Suite M-101.
 Thank you.
 Sincerely,
 /s/ Theodore M. Trushin
 THEODORE M. TRUSHIN
 TMT/hc

NOTES
[1] § 104.061, Fla. Stat. (1977), provides:

Corruptly influencing voting. 
(1) Whoever by bribery, menace, threat, or other corruption whatsoever, either directly or indirectly, attempts to influence, deceive, or deter any elector in voting or interferes with him in the free exercise of his right to vote at any election is guilty of a misdemeanor of the first degree... .
(2) No person shall directly or indirectly give or promise anything of value to another intending thereby to buy his or another's vote or to corruptly influence him or another in casting his vote. Any person who violates this subsection is guilty of a felony of the third degree... . However, this [subsection] shall not apply to the serving of food to be consumed at a political rally or meeting.
(Footnote omitted.)
[2] Our jurisdiction is grounded on the district court's certification of this case as being of great public importance. See 384 So.2d at 679 n. 28. Art. V, § 3(b)(4), Fla. Const.
[3] In the letter Trushin explained that he practiced law in Miami Beach. For the full text of the letter, see appendix.
[4] The reasons Trushin gave for sending the letter were to encourage individuals to vote in the upcoming election and to help carry out what he perceived to be a recommendation of the Florida Supreme Court and Florida Bar that everyone should have a last will and testament.
[5] The trial judge correctly overruled the objection on that ground because identity of the perpetrator is not necessary for proof of the corpus delicti.
[6] The unconstitutionality of a statute is not grounds for a new trial. Fla.R.Crim.P. 3.600.
[7] The lack-of-intent argument surfaces because of Trushin's insistence that he did not know he was breaking the law.
[8] 384 So.2d at 677 n. 24.
[9] Trushin's fourth point was rejected as a result of the court's ruling on point three. 384 So.2d at 677 n. 24.
[10] If we treat each vagueness challenge and each challenge to admissibility of the statement separately, we are actually presented with nine issues  none raised at trial and only four raised on initial appeal.
[11] The Kentucky statute barred the otherwise outright promise of a candidate to serve at a reduced salary during the term of his office.